Gary D. GREEN, Appellant,

v.

Nancy GREEN, Appellee.

No. S–9501.

Supreme Court of Alaska.

Aug. 31, 2001.

---

William T. Ford, Anchorage, for Appellant.

Karla F. Huntington, Anchorage, for Appellee.

Before FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

The divorce of Gary and Nancy Green required division of marital assets that included land, cabins, and airplanes. The trial court determined that all assets were marital property, even those that had been brought into the marriage as separate property, and that an equal division of assets was equitable. Gary challenges the trial court's findings that he intended to transmute his separate property into marital property. He also challenges the trial court's valuation and division of the marital assets. Because the trial court did not clearly err in its factual findings of intent to transmute separate property into marital property, and because the trial court's allocation of the marital estate is presumptively valid, we affirm those decisions. However, we remand for more specific findings on the valuation and distribution of the parties' cash assets.

## II. FACTS AND PROCEEDINGS

### A. Facts

When Gary and Nancy Green met, Gary lived in McCarthy in a log cabin that he had built on two-and-a-half acres of land. Nancy began living with Gary in the fall of 1982. They married on August 8, 1984. Their only son, Tyler, was born April 30, 1985. During the time that Nancy and Gary lived together they expanded the cabin to include a porch, an outhouse, and a two-story bedroom, all built using their own labor, local logs, and other salvaged materials.

Gary owned two airplanes before the marriage, a Cessna 180 and a Piper J–4E. He has been a commercial pilot since 1979. Gary sold the Piper J–4E soon after he and Nancy married, and purchased a Piper Super Cub in April 1985. The Super Cub and the Cessna 180 have been used for personal and business flying.

In 1987 Gary and a partner began McCarthy Air, a flight-seeing and air taxi service. The partnership dissolved in 1989, and Nancy and Gary traded property with the former partner for full interest in the business. McCarthy Air operates from buildings and land owned by the Greens in the town of McCarthy. Gary has conducted all of the flying for the business, while Nancy participated by managing the office and performing other assorted tasks.

It is undisputed that McCarthy Air was marital property. The profits from the business provided the family income. The business has expended significant funds to maintain and upgrade the airplanes. For example, after a 1996 crash of the Cessna, McCarthy Air spent $30,000 to repair the plane.

### B. Proceedings Below

Nancy separated from Gary on September 27, 1997, and filed for divorce in February 1998. Nancy and Gary settled child custody issues in June 1999 and these are not before us in this appeal.

Gary filed a motion for summary judgment in September 1999. He sought a ruling that the home, Cessna 180, and Super Cub were his separate property and would not be invaded in the distribution of assets. Superior Court Judge John Reese determined that the property issues presented a factual dispute and denied Gary's motion for summary judgment.

Judge Reese presided over a four-day bench trial regarding division of the Greens' marital assets. The court heard testimony of a real estate appraiser, an appraiser and auctioneer of general merchandise, an appraiser of airplanes, an appraiser of guns and knives, Nancy, her father, and Gary.

The trial court determined that none of the property brought into the marriage by Gary or Nancy remained separate property. It found no evidence of intent to keep separate the cabin and real property, and therefore the court characterized all property brought into the marriage as marital property. The trial court concluded: "For a marriage of this length with unquestioned mutual efforts expended on these assets, with no attempt to segregate any premarital item from the common enterprise, the court can only conclude that all the assets are marital assets. The law allows no other conclusion."

The trial court valued the marital estate at $428,605 and awarded each party one-half of the estate. The court did not adjust the marital estate to account for premarital contributions to the marriage. The superior court awarded two Cherokee airplanes to Nancy and the rest of the assets not previously divided by the parties to Gary. To even out the distribution, the superior court ordered Gary to pay Nancy $105,562 by May 1, 2000. The court also ordered that this debt would be secured by all the real property, the Cessna 180, and the Super Cub. The superior court entered a decree of divorce and a final distribution of property on December 7, 1999.

Gary appeals the property distribution.

## III. DISCUSSION

### A. Standard of Review

■ This court reviews the trial court's determination of what property is available for distribution under the abuse of discretion standard.[1] This court uses its independent judgment to review any legal determinations made by the trial court in determining what property is available.[2] Any findings that the parties intended to transmute separate property into marital property are disturbed only if clearly erroneous.[3] Valuation of available property requires factual determinations that are reversed only if they are clearly erroneous.[4] Equitable allocation of property is reviewable under an abuse of discretion standard and will not be reversed "unless it is clearly unjust."[5]

### B. Identification of Marital Property

■ "Equitable division of marital assets by the superior court involves a three-step procedure. First, the trial court must determine what specific property is available for distribution. Second, the court must find the value of this property. Third, it must decide how an allocation can be made most equitably."[6]

Alaska Statute 25.24.160(a)(4) provides that the court may divide the parties' property "whether joint or separate, acquired only during marriage." Therefore, the first step of dividing property involves identifying all property *acquired during marriage* as available for distribution. Marital property identified in this first step is then valued and is divided.

■ Trial courts, in analyzing the property available for distribution, may find that previously separate property has been transmuted into marital property.[7] Transmutation from separate property into marital property is based upon "the intent of the owner of the separate property, as demonstrated through ... words and actions."[8]

1. *See Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994).

2. *See id.*

3. *See id.*

4. *See id.* at 913–14.

5. *Id.* at 914.

6. *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983); *see also Murray v. Murray*, 788 P.2d 41, 41–42 (Alaska 1990); *Carlson v. Carlson*, 722 P.2d 222, 223–24 (Alaska 1986).

7. *See Brown v. Brown*, 947 P.2d 307, 309–11 (Alaska 1997).

8. *Sampson v. Sampson*, 14 P.3d 272, 277 (Alaska 2000).

Once such property is shown to have been transmuted into marital property, it is available for distribution along with the rest of the marital estate.

On appeal, Gary challenges the superior court's inclusion of the cabin site and its buildings, the Cessna 180, and the Super Cub in the marital estate. The trial court found that "all assets extant as of September 27, 1997 are marital assets. This finding includes the Cabinsite land and buildings, Cessna 180, [and] Super Cub...." The trial court also found that "Mr. Green intended to convert the Cabinsite, Cessna 180, Super Cub and any other possible pre-marital assets into marital assets." It found "no attempts by Mr. Green to segregate any pre-marital asset from the common enterprise."

Moreover, the court found:

> [T]he parties engaged in a joint economic enterprise from the date of marriage onward and that each of them pooled into that enterprise their time, talents and any premarital assets that they had. The parties used these assets exclusively as joint property throughout the marriage, never segregating the use, profits or the expenses of any asset.

Because the analysis of intent is fact-specific, the cabin site, Cessna 180, and Super Cub will be discussed in turn.

### 1. *Cabin site and buildings*

█ Because Gary acquired the cabin site before marrying Nancy, the property itself is not property "acquired only during marriage."[9] Therefore, it can only be treated as marital property if it was transmuted into such property through the parties' intent and actions demonstrating that intent.[10]

█ The trial court in this case found that Gary intended to treat the cabin site as a joint holding. When determining whether property is separate or marital, the trial

court may not focus solely on the parties' acts and disregard their intentions.[11] We have identified standards for determining whether separate real property has been transmuted into marital property, including: (1) the use of property as the parties' personal residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing title in joint ownership; and (4) using the credit of the non-titled owner to improve the property.[12]

Here, the Greens used the premises as their personal residence. As we noted above, the trial court found that "each of them pooled into [the joint economic] enterprise their time, talents, and any premarital assets that they had." It also found that "[b]y the time of separation, the primary cabin on the Cabinsite was much larger and very different from what it had been before the marriage. Every stick, rock, log, nail, shelf, window was affected by one party or the other throughout the marital years." The Greens paid all expenses for upkeep and improvement of the land and buildings with proceeds from McCarthy Air, the family business. The trial court's determination that the cabin became part of the marital estate by virtue of marital effort and use was not clearly erroneous.

Gary suggests on appeal that the trial court should not have considered the passive appreciation in the cabin site land as a marital asset. Because the trial court made no finding that the Greens treated the land differently than they did the cabin, it did not err by evaluating the cabin buildings and land as one unit.

### 2. *Cessna 180*

Gary bought the Cessna 180 in 1981, before he began his relationship with Nancy. He used the plane to earn income by hauling fish, flying adventurers into the mountains, and performing search and rescue opera-

---

9. AS 25.24.160(a)(4).

10. *See Wanberg v. Wanberg,* 664 P.2d 568, 571 (Alaska 1983); *Nicholson v. Wolfe,* 974 P.2d 417, 423 (Alaska 1999).

11. *See Nicholson,* 974 P.2d at 423.

12. *See Cox v. Cox,* 882 P.2d 909, 916 (Alaska 1994), *quoted in Harrelson v. Harrelson,* 932 P.2d 247, 251 (Alaska 1997) (citing *Chotiner v. Chotiner,* 829 P.2d 829, 832–33 (Alaska 1992)); *McDaniel v. McDaniel,* 829 P.2d 303, 306 (Alaska 1992); *Burgess v. Burgess,* 710 P.2d 417, 420 (Alaska 1985).

tions. This plane was used extensively during the marriage for the family business. Gary estimates that this plane provided $40,000 per year for McCarthy Air. In 1995 McCarthy Air paid for modifications to the plane so that it could generate more income for the business. Because Gary and Nancy had decided not to carry hull insurance for the plane, when it crashed in 1996, McCarthy Air paid $30,000 for repairs.

The trial court found that Gary owned the plane prior to the marriage and that he intended to convert it, along with other pre-marital assets, to a marital asset. This finding was not in error in light of the extensive use of the plane in the family business and the substantial investment by the business in the upkeep and upgrades of this plane. The trial court did not err in finding that the use, upkeep, and improvements of the plane for the common enterprise reflected intent to transmute the property into marital property.

### 3. *Super Cub*

Unlike the cabin site and the Cessna 180, the Super Cub was purchased during the marriage. The trial court made the following finding regarding this plane:

> A Piper Super Cub was purchased on April 30, 1985. Mr. Green claimed that it was purchased solely with pre-marital funds and was therefor[e] his separate property. Ms. Green disagreed. Conflicting and unclear evidence was offered on this issue. The court does not need to reach that evidentiary issue, because even if it was Mr. Green's separate property as of April 30, 1985, it became a marital asset during the marriage.

The trial court's findings of joint use and management and intention to transmute are not clearly erroneous. We therefore find no error in the trial court's inclusion of this plane in the marital estate.

### C. *Valuation of Cash Assets*

The trial court found that the parties had $27,000 cash on hand and approximately $6,900 [13] in bank accounts that were divided at separation. The trial court included this money in the pool of marital assets. It determined that Gary had received the bank balances of approximately $6,900, as well as $20,000 of the cash that the Greens kept under the bed, and that Nancy had received $7,000 cash from under the bed.

We have held that "it is error to place a value on an account that has been emptied prior to trial." [14] It is also error for a trial court to value assets at separation, rather than at trial, unless it makes specific findings as to why the date of separation is the more appropriate time for valuation.[15] Here, the trial court made no such findings. We therefore remand to the trial court for findings on whether the Greens' marital cash assets were still available at trial. The trial court should also consider on remand whether evidence exists that the cash was "dissipated, wasted, or converted to a non-marital form," warranting recapture of the marital asset by valuing the asset pre-separation and crediting all or part of it to the account of the party who controlled the asset.[16]

### D. *Equitable Division of Marital Property*

Gary challenges the trial court's division of the marital property. The trial court found that "[t]he most equitable distribution of this marital estate is to divide the assets and liabilities of the marriage equally." It then awarded each party $214,302.50 of the $428,605 marital estate.

Alaska Statute 25.24.160 requires the trial court to "fairly allocate the economic effect of divorce." To do this, the trial court must consider a number of specific factors

---

13. The oral and written findings contain a minor discrepancy as to whether the bank accounts had a value of $6,906 or $6,907.

14. *Cox v. Cox,* 882 P.2d 909, 917 (Alaska 1994).

15. *See Ogard v. Ogard,* 808 P.2d 815, 820 (Alaska 1991).

16. *Cox,* 882 P.2d at 918 n. 5; *see also Berry v. Berry,* 978 P.2d 93, 99 (Alaska 1999) (Matthews, C.J., concurring); *Jones v. Jones,* 835 P.2d 1173, 1175–76 (Alaska 1992); *Hartland v. Hartland,* 777 P.2d 636, 642–43 (Alaska 1989).

when dividing property.[17] As we discussed above, the court has available for distribution all assets acquired during marriage.[18] The court may, if equity requires, also invade the separate property of either party.[19]

Trial courts have broad discretion in dividing property in divorce.[20] An equal division of the marital property is presumptively valid.[21]

The trial court here considered the factors set forth in AS 25.24.160 when dividing the property. The court specifically "gave greatest consideration to the length of the marriage, the contributions of the parties before and during the marriage, the overwhelming evidence of joint enterprise throughout the marriage, the income earning capacity of the assets awarded to Mr. Green, and the parties['] relative financial situation."

Gary argues that the trial court erred because it did not appropriately consider his premarital contributions to the marital estate and that it also erred by requiring him to pay Nancy $105,562.

The trial court explained its property division:

Considering the length of the marriage and the negligible financial investment of either of the parties in their premarital contributions, I am not making any adjustments to the marital estate because of premarital contributions to the marriage.

We have recognized that premarital contributions to the marital estate may be relevant to the equitable division,[22] even though this is not a factor specifically listed in AS 25.24.160(a)(4).[23] Although a trial court has discretion to credit one spouse for contributions made with separate property to the marital property subject to division,[24] we have not held that failing to make such an adjustment is an abuse of the trial court's discretion.

While the trial court's oral findings indicate that it was focusing on the parties' "financial investment" in the marriage, the court's written findings further clarify:

The court has considered Mr. Green's contribution of pre-marital assets. Both parties contributed significant time and effort into the marriage. In light of the eventual value of the marital estate and the length of the marriage, Mr. Green's premarital contribution was not sufficient to warrant

**17.** *See* AS 25.24.160(a)(4)(A)-(I) (also known as the "Merrill factors" as listed in *Merrill v. Merrill*, 368 P.2d 546, 547 n. 4 (Alaska 1962)). AS 25.24.160(a)(4) states in part:
[T]he division of property must fairly allocate the economic effect of divorce by being based on consideration of the following factors:
(A) the length of the marriage and station in life of the parties during the marriage;
(B) the age and health of the parties;
(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;
(D) the financial condition of the parties, including the availability and cost of health insurance;
(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;
(F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;
(G) the circumstances and necessities of each party;
(H) the time and manner of acquisition of the property in question; and

(I) the income-producing capacity of the property and the value of the property at the time of division.

**18.** *See* AS 25.24.160(a)(4).

**19.** *See id.*

**20.** *See Harrelson v. Harrelson*, 932 P.2d 247, 253 (Alaska 1997).

**21.** *See Brooks v. Brooks*, 733 P.2d 1044, 1058 (Alaska 1987).

**22.** *See Chotiner v. Chotiner*, 829 P.2d 829, 835 (Alaska 1992); *Laing v. Laing*, 741 P.2d 649, 654 (Alaska 1987) ("A spouse's contribution of substantial separate property to the marriage may be such a relevant factor.").

**23.** *See Wanberg v. Wanberg*, 664 P.2d 568, 575 n. 22 (Alaska 1983) ("The criteria in *Merrill* are not exhaustive, and thus the trial court is free to consider additional factors which may be relevant in a particular case.").

**24.** *See Laing v. Laing*, 741 P.2d 649, 654 (Alaska 1987).

him receiving more than half of the marital estate.

The trial court's factual findings are not clearly erroneous and it cannot be said that the trial court abused its discretion. We therefore find no error.

Gary argues that the trial court's award of $105,562 to Nancy, to be paid within six months, was "inequitable and unrealistic." He contends that the trial court misinterpreted his ability to pay such a judgment.

We have stated that "it is not error per se to make a cash award requiring one party to sell illiquid assets (or make installment payments) where such an award causes no hardship."[25] The trial court explained in this case that for Gary to pay Nancy, "Mr. Green is free to encumber the property and borrow the money to pay her off. He can sell things off to pay her off." It also found that "clearly the economic enterprise in McCarthy was generating more than a few hundred dollars a month, which was what was indicated by Mr. Green's tax return." The trial court apparently considered whether it would cause hardship for Gary to fulfill the obligation imposed by the judgment and suggested avenues available to Gary to meet the obligations. Given the trial court's careful consideration of this issue, we find no error in the distribution.[26] We affirm the trial court's equal allocation of the marital assets, and its ruling that Gary must pay Nancy the amount that will equalize the distribution of assets, but we remand for determination of the value of the marital cash assets.

## IV. CONCLUSION

The superior court's decision is AFFIRMED in part and REMANDED for further proceedings in accordance with this opinion.

**25.** *Cox v. Cox*, 931 P.2d 1041, 1045 (Alaska 1997).

**26.** *See Johns v. Johns*, 945 P.2d 1222, 1228 (Alaska 1997) ("The trial court therefore did consider possible hardship to [the party upon whom the obligation was imposed] and suggested a means of ameliorating it. Thus, we find that the superior court did not err in its overall property distribution.").