**Homer C. INMAN, Appellant,**

v.

**Peggy S. INMAN, Appellee.**

No. S–10238.

Supreme Court of Alaska.

April 11, 2003.

---

Richard W. Wright, Fairbanks, for Appellant.

Carl J.D. Bauman, Hughes Thorsness Powell Huddleston & Bauman, Anchorage, for Appellee.

Before: MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Homer Inman appeals the superior court's grant of Civil Rule 60(b) relief from judgment and its subsequent award of thirty percent of his civil service pension to his former wife, Peggy. Because the superior court lacked personal jurisdiction over Peggy at the time of the divorce, the original property division was void under Civil Rule 60(b)(4) and the court's subsequent award to Peggy of thirty percent of the pension as of the date she filed the motion was appropriate. In addition, the superior court's setting of the date of separation as the date the divorce complaint was filed was not clearly erroneous, and the court did not abuse its discretion in finding that Homer had thirty years of qualifying service for his pension. We therefore affirm the judgment of the superior court in all respects.

## II. FACTS AND PROCEEDINGS

Peggy and Homer were married in Castle Rock, Colorado on April 19, 1965. During the course of the marriage, Peggy and Homer had three sons. At some point during the marriage the couple moved to Fairbanks where Homer was working as a civil servant at Eielson Air Force Base.

In August 1976 Peggy and the children moved to Colorado. Peggy understood that Homer would join the family in Colorado as soon as he was eligible for retirement. Homer visited Peggy and the children for approximately two to three weeks each year. Peggy visited Homer in Alaska in 1981. Peggy and the children moved from Colorado to Texas in approximately 1978, and from Texas to New Mexico in 1982.

In November 1982 Homer filed for divorce in Fairbanks. Peggy was served with the complaint in New Mexico in February 1983. Peggy neither appeared nor filed an answer to the complaint. In April a default divorce decree was entered. The decree provided that each party should be permitted to maintain the property in his or her possession at that time.

In 1983 Homer remarried. He retired from his civil service job in July 1984 at approximately age fifty-seven. He began receiving pension benefits in August 1984.

In September 1999 Peggy filed a motion for a "Domestic Relations Order to Partition Plaintiff's Retirement Benefits 50/50." Homer opposed Peggy's motion, arguing that it had not been filed within a "reasonable time," that the issue should have been raised on appeal from the original decree, and that Peggy failed to demonstrate that the pension would have been divided in the first place had its existence been disclosed from the start. After supplemental briefs were submitted by the parties, Standing Master Katherine Bachelder held oral argument and then issued a report containing factual findings and legal recommendations regarding Peggy's motion.

In her report, Master Bachelder found that Peggy was entitled to relief only within the parameters of Civil Rule 60(b), which provides the circumstances under which a court may set aside a final judgment. Finding that the property decree was void for lack of personal jurisdiction, Master Bachelder set it aside pursuant to Civil Rule 60(b)(4). Master Bachelder then found that Peggy's motion was timely despite the passage of seventeen years, and that Homer's defense of laches would not provide him relief from a void judgment. Master Bachelder recommended that a trial be held to divide the parties' marital property, including Homer's pension. In an order dated July 28, 2000,

Superior Court Judge Niesje J. Steinkruger adopted Master Bachelder's report and ordered a trial. The trial was held on January 25, 2001.

Following the trial, Master Bachelder issued a second report in which she made recommendations regarding the division of property and retirement benefits. Although Homer alleged that the date of separation was August 1976, Master Bachelder found that the marriage did not terminate as a joint enterprise until November 1982. Further, Master Bachelder suggested that Peggy be awarded fifty percent of the marital portion of Homer's pension which constituted thirty percent of the entire pension. Master Bachelder found that Peggy was entitled to pension benefits effective October 1999, the month after the date on which she first filed the complaint, and Master Bachelder recommended that Peggy not be awarded a share of the benefits paid to Homer from August 1984 through September 1999 due to her delay in acting to obtain rights to Homer's pension and Homer's subsequent reliance on that delay. Judge Steinkruger adopted the master's report in full on May 21, 2001.

Homer appeals.

## III. STANDARD OF REVIEW

■ A challenge to the validity of a judgment under Civil Rule 60(b)(4) is strictly a question of law.[1] We review questions of law *de novo*.[2] We will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy" for questions of law.[3]

■ We "review[ ] a trial court's findings of fact under a clearly erroneous standard."[4] A finding of fact is clearly erroneous when we are left with a definite and firm

conviction that the trial court has made a mistake.[5] We review the equitable allocation of property for abuse of discretion and will not reverse the trial court's decision "unless it is clearly unjust."[6]

## IV. DISCUSSION

### A. The Trial Court Did Not Err When It Ordered a Trial To Determine the Division of Marital Property.

The trial court adopted the Master's finding that the 1982 property division was void for lack of personal jurisdiction and that Peggy was accordingly relieved from it. Under Civil Rule 60(b)(4), a party may be relieved from a final judgment that is void.[7] Homer argues that the superior court erred in ordering a trial to determine the division of marital property. He claims that once a court rules that a judgment is void, the court may not act affirmatively to impose relief. He further maintains that laches prevents Peggy from altering the property division at this time.

### 1. The trial court did not err in acting further after setting aside the judgment as void under Rule 60(b)(4).

■ Homer argues that Rule 60(b)(4) can be used only to set aside a judgment and cannot be the basis for the imposition of affirmative relief. But in setting aside the judgment and ordering a trial for the division of the marital property, the superior court did not grant affirmative relief. Rather, the court ordered a new trial in order to equitably divide the estate in the absence of a

1. *DeVaney v. State, Dep't of Revenue, Child Support Enforcement Div.*, 928 P.2d 1198, 1199 (Alaska 1996).

2. *Krossa v. All Alaskan Seafoods, Inc.*, 37 P.3d 411, 415 (Alaska 2001).

3. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

4. *Am. Computer Inst., Inc. v. State*, 995 P.2d 647, 651 (Alaska 2000).

5. *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993).

6. *Green v. Green*, 29 P.3d 854, 857 (Alaska 2001).

7. Alaska Rule of Civil Procedure 60(b) provides, in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(4) the judgment is void[.]

legally binding property division.[8] The court's actions here are similar to what was suggested in *U.S. v. One 1961 Red Chevrolet Impala Sedan*[9] when the judgment in that case was set aside as void.[10] Because the court in this case held a new trial on the property division, it did not affirmatively impose relief under Rule 60(b)(4) and,. therefore, its actions were proper and Homer's challenge to them fails.

### 2. The trial court did not err in denying Homer's laches defense.

Homer next argues that Peggy's motion for relief should be denied because of her delay in filing the motion and the resulting prejudice to him. It is well-accepted that "[p]roperty division in a divorce action consists of three steps: (1) determining what property is available for distribution, (2) valuing the property, and (3) allocating the property equitably."[11] In this case, the superior court determined that, aside from Homer's retirement benefits, the marital property was divided equitably and that Homer had acquired thirty years of retirement benefits. The court then looked at the equitable factors to determine to what portion of Homer's benefits Peggy was entitled. In looking at these equitable factors, the court took notice of both Peggy's delay in filing her motion and Homer's failure to explicitly apprise the court of the existence of his retirement benefits before accepting a default divorce. The court concluded that both parties had committed economic misconduct. Consistent with the maxim that a party must do equity to receive equity,[12] the court found that it would be equitable to award Peggy her marital share of Homer's retirement benefits as of the date she filed her motion to set aside

the property division. In doing so, the court reasonably accounted for Peggy's delay in bringing her motion. We therefore find that the court did not err in denying Homer's defense of laches to Peggy's motion for relief.

### B. The Trial Court Did Not Err in Finding that the Functional Termination of the Marriage Was the November 1982 Divorce Filing.

Homer argues that the court should have dated the functional termination of the marriage at August 1976, when Peggy and their children moved to Colorado. However, after listening to conflicting testimony concerning the state of the marriage after the 1976 move, the court found that the evidence offered more support for the position that the marriage did not terminate until Homer filed for divorce in November 1982. In support of its conclusion, the court pointed to Homer's visits with Peggy and the children every year, the continued sexual relations between Homer and Peggy until 1981, Homer's efforts to lead Peggy to believe that they would reunite once he retired, and Homer's economic support of the family. Also before the court was evidence that they each had the power of attorney signed over to the other when Peggy moved to Colorado, that they commingled assets, maintained joint checking accounts, filed joint tax returns, and were jointly responsible for various liabilities. In addition, Homer assisted Peggy and the children in their move from Alaska to Colorado and then from Colorado to Texas, and he continued to tell Peggy that he did not want a divorce even after she and the children moved from Alaska and that he planned to join the family after he retired. In light of Alaska law marking the date of separation as

---

8. The court clearly has the authority to so order the equitable division of the marital property under AS 25.24.160(a)(4), which provides that in an action for divorce, the court may provide for the division of the parties' property, including retirement benefits acquired during the marriage.

9. 457 F.2d 1353 (5th Cir.1972).

10. *Id.* at 1356 (stating that, once judgment was set aside under Rule 60(b)(4), new proceedings were required for moving party to obtain affirmative relief).

11. *Faulkner v. Goldfuss*, 46 P.3d 993, 996 (Alaska 2002).

12. *See Lundgren v. Nat'l Bank of Alaska*, 756 P.2d 270, 276 (Alaska 1987) (stating that "a party seeking equity from another party must 'do equity' only if the benefits received from that party were somehow derived from the equity the party is seeking"); *see also Nat'l Bank of Alaska v. J.B.L. & K. of Alaska, Inc.*, 546 P.2d 579, 589 (Alaska 1976) (stating "the equitable maxim that he who seeks equity must do equity").

the date when the marriage ceased to function as a joint enterprise, and leaving that determination to the discretion of the trial court on a case-by-case basis,[13] we affirm the superior court's finding that the marriage ended with the 1982 divorce. There is substantial evidence in the record to support the superior court's conclusion that Peggy and Homer maintained a marital relationship until Homer filed for divorce in 1982 and, as such, the superior court's determination that this was the date of separation is not clearly erroneous.

## C. The Trial Court Did Not Err When It Calculated Homer's Qualifying Years for his Pension at Thirty Instead of Thirty–Seven.

■■■ Homer argues that he had thirty-seven qualifying years of service for his civil service pension and that Peggy should bear the burden of proving that he did not acquire the thirty-seven years of qualifying service years that he claims he did. The record reflected conflicting evidence on this subject. While Homer testified that he began his civil service employment in 1950 and that he had three years of active military time that counted towards his civil service retirement, he also testified that he did not obtain career status for retirement purposes until sometime between 1953 and 1955. The court resolved this question against Homer, deciding that he did not start accumulating qualifying years until 1955 and crediting him with thirty years of service at the time of his July 1984 retirement.[14]

■■■ The only evidence offered by Homer in support of his argument that he had thirty-seven qualifying years is his testimony that he began working in the civil service job in 1950 and that he had three years of active

military service. Homer did not explain his testimony indicating that his service did not begin to count towards retirement until between 1953 and 1955, nor did he offer documentary evidence at trial [15] of his military service and how that military service applied to his retirement benefits. Homer claims that because Peggy brought this motion, she should bear the burden of proof on the issue of how many years of qualifying service he had. He argues that Peggy had full access to all of his benefit records and that any ambiguity in the number of qualifying years should be resolved against her. The superior court properly rejected these arguments. Peggy brought a motion to set aside the property division, not to challenge the number of years of qualifying service Homer had accrued. We have in the past held that "[t]he party asserting a fact generally bears the burden of proving that fact. . . . This is particularly true when the party asserting a fact controls the evidence which bears upon that fact." [16] Thus, for Homer to be credited with thirty-seven qualifying service years, he must provide sufficient evidence to support this conclusion. Homer failed to provide such evidence. Therefore, it was not an abuse of discretion for the superior court to find that Homer had thirty years of qualifying service.

## V. CONCLUSION

Because the superior court followed the appropriate procedures after determining that the original 1983 property division was void, and because the findings that the parties separated on November 12, 1982 and that Homer attained thirty qualifying years of service were supported by the record, the

---

**13.** *Hanlon v. Hanlon,* 871 P.2d 229, 231 (Alaska 1994).

**14.** While the court did not make explicit findings on this issue, it did state that the "eighteen years of marriage [should be] divided by thirty years of retirement accrual." From this, we infer that the superior court determined that Homer had thirty years of qualifying service.

**15.** On appeal, Homer has asked this court to consider a March 15, 1984 computer printout

showing that his creditable service in 1984 was estimated at 37.19 years. Because this evidence was not made available to the trial court, we decline to consider it at this time. *See B.B. v. D.D.,* 18 P.3d 1210, 1214 (Alaska 2001) (stating that evidence not presented to the trial court will not be considered by this court on appeal).

**16.** *Sloan v. Jefferson,* 758 P.2d 81, 83 (Alaska 1988).

superior court's decision is AFFIRMED in its entirety.

FABE, Chief Justice, and BRYNER, Justice, not participating.