NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MICHAEL C. HUGHES, | ) | |
| | ) | Supreme Court No. S-14158 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-09-08737 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| DORA J. HUGHES, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1457 - May 1, 2013 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Vikram N. Chaobal, Law Offices of Vikram N. Chaobal, Anchorage, for Appellant. Terry C. Aglietti, Aglietti, Offret & Woofter, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carpeneti, Justice, not participating.]

## I. INTRODUCTION

Following divorce proceedings, the husband appeals the trial court's characterization of the couple's residence, two other properties, and his business as marital property, as well as the court's valuation of one property. Because the trial court did not err in characterizing the residence and other two properties as marital property, we affirm those decisions. Because sufficient evidence was not elicited from the parties for an appropriate valuation of one property, we remand for re-valuation of that property.

---

&ast; Entered under Alaska Appellate Rule 214.

Because the trial court's determination that the business had been transmuted to marital property was not properly explained, we remand for further explanation and suggest consideration under an active appreciation analysis.

## II.    FACTS AND PROCEEDINGS

Michael and Dora Hughes began living together in August 2002 and married in July 2004. They separated in June 2009 and Dora filed for divorce in July. The couple had no children, leaving only property and debt allocation for the trial court to address.

Before Michael and Dora's cohabitation and subsequent marriage, Michael purchased a house in Wasilla. The house was titled solely in his name, but the parties used it as their joint primary residence. The house was not completed when Dora moved in, and she assisted in cutting, sanding, and staining the flooring and woodwork, although Michael disputed the extent of her contribution. Dora also maintained the house and contributed to its upkeep, allowing Michael to attend to his business pursuits. The trial court found that based on Dora's improvements and maintenance, the house had been transmuted into marital property.

While the parties lived together but before their marriage, Michael purchased two adjoining parcels of land in Yentna: Tract B and Tract C. Tract B was held in Michael's name and Tract C was purchased and held through his business. Michael cleared Tract B and built a lodge on the property with occasional help from Dora. Tract C was left as an undeveloped lot complementing Tract B. Dora testified that it was their shared dream to use the completed lodge for a fly-in hunting and fishing business, but Michael disputed whether Dora actually was part of that plan. The trial court found that Dora's management of day-to-day tasks in Wasilla allowed Michael to work on Tract B and that this pooling of effort showed a shared plan to jointly develop both properties. The trial court therefore found both tracts to be marital property. The

court valued Tract B at $160,000, multiplying the value of the land by three to establish the value of the improvements, and then adding the numbers together to find the property's net value.

Before the parties' cohabitation and marriage, Michael formed Northern Assets Group, LLC (NAG), which included business ventures in real estate development and insurance.[1]  Michael bought several properties through NAG during cohabitation, making the down payments from the company account but later paying the mortgage, insurance, and taxes on the properties with marital income.  Michael testified that he tried to keep his business and marital finances separate and argued that income earned and assets purchased by NAG should be considered separate property.  The parties submitted a joint property table listing NAG as Michael's undisputed separate property.  But during closing argument Dora contended that to the degree Michael used marital income to make payments on assets and property in NAG's name, those items constituted marital property.  The court found that the business income and assets were marital property because without the marriage Michael could not have supported the purchases and debt, nor could he have had the freedom to pursue the business endeavors.

The court supported these property determinations with its finding that Dora's marital work performing household tasks, shopping, cooking, and assisting with landscaping and exterior maintenance of the Wasilla house allowed Michael to manage his businesses and improve his real property.  The court stated that if Michael had truly intended to keep the property separate, he should not have accepted Dora's contributions toward those assets.

Michael filed a motion to reconsider.  The trial court denied the majority

---

[1]    Michael also formed Home First Mortgage Co. before the parties' cohabitation.  The court determined the business was valueless and Michael does not appeal this determination.

of the motion but let Michael add evidence of mortgages on several of the properties. Michael then appealed, arguing the trial court erred by determining that the couple's primary Wasilla residence, Yentna Tracts B and C, and NAG had been transmuted to marital property. Michael also challenges the trial court's valuation of Tract B. Finally, Michael argues that the trial court did not give adequate weight to his testimony and failed to credit him with improvements made to marital property.

## III. STANDARD OF REVIEW

The trial court has "broad discretion in fashioning a property division in divorce actions."[2] The division of property by the trial court is a three-step process.[3] Step one, "determining what property is available for division as marital property,"[4] "is in large part a legal determination, involving the interpretation of AS 25.24.160(a)(4), and applying legal principles to the facts of the case."[5] We apply our independent judgment to the trial court's legal determinations.[6] "Otherwise, we review a trial court's determinations as to property available for distribution under the abuse of discretion standard."[7] "Any findings that the parties intended to transmute separate property into

---

[2]     *Hartland v. Hartland*, 777 P.2d 636, 639 (Alaska 1989) (citing *Laing v. Laing*, 741 P.2d 649, 651 (Alaska 1987)).

[3]     *Krize v. Krize*, 145 P.3d 481, 483-84 (Alaska 2006).

[4]     *Id.* (quoting *Sampson v. Sampson*, 14 P.3d 272, 275 (Alaska 2000)).

[5]     *Lewis v. Lewis*, 785 P.2d 550, 555 (Alaska 1990) (quoting *Julsen v. Julsen*, 741 P.2d 642, 646 n.4 (Alaska 1987)) (alteration and internal quotation marks omitted).

[6]     *Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991).

[7]     *Id.*

marital property are disturbed only if clearly erroneous."[8] "A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that the trial court has made a mistake."[9] Step two, placing a value on the property, is a factual determination that will be upset only if there is clear error.[10] Step three, the equitable allocation of property, "is reviewed purely under the abuse of discretion standard and will not be disturbed unless it is clearly unjust."[11]

## IV.   DISCUSSION

### A.   The Trial Court Did Not Err In Determining That The Wasilla Residence Was Marital Property.

The trial court determined that the Wasilla residence was transmuted from separate to marital property. Property owned separately by one party is transmuted into marital property if the owner demonstrates through words and actions an intent to treat the property as marital.[12] We consider several factors to help determine intent to transmute a residence: "(1) the use of property as the parties' personal residence, and (2) the ongoing maintenance and managing of the property by both parties, as well as (3) placing the title of the property in joint ownership and (4) using the credit of the

---

[8]     *Green v. Green*, 29 P.3d 854, 857 (Alaska 2001) (citing *Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994)).

[9]     *Abood v. Abood*, 119 P.3d 980, 984 (Alaska 2005) (citing *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993)).

[10]     *Hartland v. Hartland*, 777 P.2d 636, 639 (Alaska 1989) (quoting *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988)).

[11]     *Id.* (quoting *Moffit*, 749 P.2d at 346) (internal quotation marks omitted).

[12]     *Green*, 29 P.3d at 857.

non-titled owner to improve the property."[13]

The trial court relied on the facts that the house had served as the parties' personal residence and that Dora had contributed to the home's maintenance and management, which went from an unfinished to a finished state during her residency. Michael argues that Dora's everyday tasks such as cooking and cleaning do not qualify as "maintenance and managing of the property" and that the first factor, use of the property as the parties' personal residence, is by itself insufficient to support a transmutation determination.

We have recognized it is not necessary for all four transmutation factors to be present.[14] Here the parties do not dispute that the house was the parties' personal residence for seven years. As to the second factor, "[t]o establish ongoing management and maintenance, the non-owning spouse's 'participation must be significant and evidence an intent to operate jointly.' "[15] "[W]here the property at issue is the marital home, different management and maintenance activities may demonstrate an intent to hold the property jointly."[16]

We have held varying levels of participation as satisfying the maintenance and management factor.[17] In *Abood v. Abood* we upheld a finding of maintenance and

---

[13]     *Cox*, 882 P.2d at 916 (internal citations and quotation marks omitted).

[14]     *Chase v. Chase*, 109 P.3d 942, 948 (Alaska 2005).

[15]     *Abood*, 119 P.3d at 988 (quoting *Keturi v. Keturi*, 84 P.3d 408, 417 (Alaska 2004)).

[16]     *Id.* (citing *Harrelson v. Harrelson*, 932 P.2d 247, 251-52 (Alaska 1997)).

[17]     *See, e.g., id.*; *Hanson v. Hanson*, 125 P.3d 299, 307-08 (Alaska 2005); *Burgess v. Burgess*, 710 P.2d 417, 420-21 (Alaska 1985); *Wanberg v. Wanberg*, 664 P.2d 568, 572 (Alaska 1983).

management of the marital home based on the non-owning spouse's extensive efforts at remodeling including "new tile, . . . new carpeting, paint, new appliances, new lighting fixtures . . . new shower, [and new] windows," as well as ongoing cleaning and maintenance.[18]  In *Hanson v. Hanson* we upheld a finding of maintenance and management where the non-owning spouse contributed financially to and managed the construction of a garage and attached loft, selected carpet, landscaped parts of the property, and oversaw construction of a greenhouse.[19]

Here Dora's income went to basic living expenses benefitting both parties. She provided linens, chairs, a sofa, end tables, lamps, and artwork for the house.  She contributed to improvements in the form of labor and purchasing supplies.  Together Michael and Dora renovated the kitchen; laid flooring; cut, sanded, and stained trim for the doors, windows, and floorboards; and hung sheetrock in the bottom floor.  After the house was completed Dora performed routine maintenance and upkeep and contributed to projects while Michael traveled to Yentna Tract B to work on the lodge.  Because the trial court's reliance on this testimony to find maintenance and management was not clearly erroneous, we affirm the trial court's determination that the marital home was transmuted into marital property.[20]

---

[18]     119 P.3d at 988.

[19]     125 P.3d at 307-08.

[20]     Michael argues that the court erred by placing more weight on Dora's testimony about the state of the marital residence when she moved in than on his own. We give "particular deference to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence." *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (internal quotation marks omitted).  The trial court found Dora's testimony more persuasive and we will not disturb that finding absent
(continued...)

Michael also argues that he did not receive credit for the money he invested in the residence before he married or began living with Dora. Generally transmutation converts an asset completely from separate to marital.[21] Although a court may consider a spouse's contribution of separate property to the marriage when equitably allocating marital property, such an adjustment is not required and we have not held that failing to make such an adjustment is an abuse of discretion.[22] We are not persuaded that the court abused its discretion here.

**B.    The Trial Court Did Not Err In Determining That Yentna Tracts B and C Were Marital Property.**

The trial court found that Yentna Tracts B and C were purchased while the parties were living together and that Dora's management of day-to-day tasks at the Wasilla residence allowed Michael to work on improving Tract B.[23] The court also found that by the time the properties were purchased the parties were enmeshed as a single unit with a shared plan to develop Tracts B and C as a future home or business. Based on these findings, the trial court held that Yentna Tracts B and C were marital property. Michael argues that the court misapplied the transmutation test when it held

---

[20]    (...continued)
evidence it was clearly erroneous. *See* Alaska R. Civ. P. 52(a).

[21]    *Harrower v. Harrower*, 71 P.3d 854, 858 (Alaska 2003).

[22]    *See Chotiner v. Chotiner*, 829 P.2d 829, 835 (Alaska 1992) (holding trial court's refusal to give credit for down payment on marital home not abuse of discretion).

[23]    Although Michael testified that Tract C was purchased by NAG, the trial court found no distinction between Michael and NAG for the purpose of determining marital versus non-marital status of Tract C. Michael does not challenge this finding on appeal.

the properties to be marital.[24] Michael misconstrues the court's analysis as transmuting separate property into marital property, rather than determining that the properties were marital when acquired.

Generally courts divide property "acquired only during marriage."[25] But trial courts have "discretion to include in the marital estate property that was acquired during . . . premarital cohabitation."[26] We have clarified that property acquired by one party during premarital cohabitation may be considered marital "without explicit factual findings about either (1) the parties' intent to treat the property as marital or (2) the need to treat the property as marital in order to do equity."[27] In *Chase v. Chase* we upheld a trial court's determination that property acquired during cohabitation was marital based solely on "the fact that the parties lived together and later married."[28] Likewise, in *McLaren v. McLaren* we held that the trial court had discretion to include property acquired during cohabitation in the marital estate based on evidence that the parties were an economic unit during their premarital cohabitation.[29]

Here the trial court made findings that Tracts B and C were acquired during premarital cohabitation and that the parties' actions showed an intent to operate the

---

[24]    The trial court's conclusion that Yentna Tract C is marital property addresses the transmutation factors but gives them little weight.

[25]    AS 25.24.160(a)(4).

[26]    *McLaren v. McLaren*, 268 P.3d 323, 333 (Alaska 2012). *See also Chase v. Chase*, 109 P.3d 942, 947 (Alaska 2005); *Murray v. Murray*, 788 P.2d 41, 42 (Alaska 1990).

[27]    *McLaren*, 268 P.3d at 333.

[28]    109 P.3d at 947.

[29]    268 P.3d at 333.

properties jointly. The trial court's analysis of the transmutation factors for Tract C was unnecessary and does not affect the validity of the decision that the two properties were marital when acquired. We therefore affirm the trial court's determination that Yentna Tracts B and C were marital property subject to distribution.[30]

## C. There Was Error In The Valuation Of Tract B.

The trial court valued Tract B by taking the tax-assessed value of the land, multiplying it by three to establish the value of the improvements, and then adding the numbers together to find the net value of the land and improvements. The court did not explain its reasoning for this valuation, but rather cited the fact that the parties had done little to provide the court with a reasonable basis upon which to value the buildings. Michael argues that the trial court erred by relying on a tax-assessed value of land and that the valuation method was arbitrary.

We find no error in using tax appraisals as a starting point for valuation of marital property,[31] but Michael is nonetheless correct that the trial court's method of valuation was arbitrary. We have held that "it is the duty of the parties, not the court, to

---

[30] The trial court also ruled that certain personal property, including a boat, trailer, six-wheeler, dozer, and snowmachine cargo trailer, were marital assets either because they were purchased during cohabitation or because they were used with the Yentna property. Michael challenges this ruling in a footnote in his brief. Michael identifies all of the items except the trailers as purchased during cohabitation, but he does not indicate when the snowmachine trailer was purchased and he fails to cite any evidence in the record supporting an argument that the trailers were not connected to the Yentna property. Michael's challenge to the trial court's characterization of these items is waived for failure to adequately brief it. *See Hymes v. DeRamus*, 222 P.3d 874, 885 n.42 (Alaska 2010) ("[I]ssues not briefed or only cursorily briefed are considered waived . . . ." (quoting *Shearer v. Mundt*, 36 P.3d 1196, 1199 (Alaska 2001))).

[31] *See Harrower v. Harrower*, 71 P.3d 854, 862 (Alaska 2003).

ensure that all necessary evidence is before the court in divorce proceedings."[32]  But we also have held that a court's valuations must have evidentiary support,[33] and in cases where evidence of value is lacking the best practice is for the trial court to direct the parties to fill the evidentiary void.[34]  Michael's failure to offer an estimate of the property's market value does not justify the court's unsupported valuation. We therefore remand for further proceedings on valuation of Tract B.

D.    The Determination That Michael's Business Was Transmuted To Marital Property Is Not Supported By The Record.

The trial court determined NAG to be marital property despite the fact that it was established prior to the parties' cohabitation and marriage.  The trial court relied on the following facts:  Michael had not shown he kept the assets, income, and debt from the business sufficiently distinct from the marriage; the business had grown during cohabitation and marriage; and Michael had enjoyed more time to pursue his business interests because of the marriage.  Michael argues that these facts fail to conform to the transmutation factors the court was required to apply when finding the entirety of the separate property had become marital property.[35]

Michael is correct that the record does not support a transmutation determination.  Excepting Yentna Tract C and the related personal property, addressed above, neither party showed the requisite intent to treat NAG as joint property through the transmutation factors.  There was no testimony showing that NAG was used for any

---

[32]    *Brotherton v. Brotherton*, 941 P.2d 1241, 1245 (Alaska 1997) (quoting *Root v. Root*, 851 P.2d 67, 69 (Alaska 1993)).

[33]    *Cartee v. Cartee*, 239 P.3d 707, 719 (Alaska 2010).

[34]    *Root*, 851 P.2d at 69.

[35]    *See Harrower*, 71 P.3d at 858 (noting that transmutation converts the entire asset to marital property).

marital purpose, that it was held jointly, that Dora contributed any work or credit toward it, or that she took any part in its management. Dora's shouldering of the everyday tasks alone is insufficient to find an intent to operate NAG jointly.

A transmutation determination is further eroded by the fact that in preparation for trial the parties submitted a joint property table showing NAG as undisputed non-marital property. "Parties to a divorce may stipulate to the characterization of property . . . . [and] [a]bsent a cognizable contract defense, such as fraud, stipulations should be enforced."[36] We therefore remand for further findings regarding NAG.

On remand the court should consider whether an active appreciation analysis better fits the facts at issue. Active appreciation occurs when marital funds or marital efforts cause a spouse's separate property to increase in value during the marriage.[37] In active appreciation, the asset's value at the beginning of the marriage remains separate property, but any subsequent increase in value resulting from active marital conduct is treated as marital property.[38]

> In order to find active appreciation in separate property, the court must make three subsidiary findings. First, it must find that the separate property in question appreciated during the marriage. Second, it must find that the parties made marital contributions to the property. Finally, the court must find a causal connection between the marital contributions and at

---

[36]    *Brown v. Brown*, 947 P.2d 307, 309 (Alaska 1997) (internal citations and quotation marks omitted).

[37]    *Martin v. Martin*, 52 P.3d 724, 727 n.10 (Alaska 2002).

[38]    *Harrower*, 71 P.3d at 858.

least part of the appreciation.[39]

The trial court's findings that NAG was started before the cohabitation and marriage, that it grew during the marriage, and that the growth was due to Michael's efforts at the business and to Dora's efforts at home, appear to fit an active appreciation analysis. This would entitle Dora to an interest in the increase in the value of the business, rather than its entire value.[40]

## V. CONCLUSION

We AFFIRM the trial court's determinations that the Wasilla residence was transmuted into marital property and that Yentna Tracts B and C were marital property at their acquisition. We VACATE the trial court's valuation of Tract B and its characterization of NAG as marital property and REMAND for further proceedings on these issues.

---

[39] *Id.* (quoting BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 5.22, at 236 (2d ed. 1994)).

[40] *Id.* This analysis does not apply to Tract C because the trial court determined it was marital property upon acquisition despite being putatively owned by NAG. *See* note 23, *supra*.