NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CLARICE YASSICK, | ) | |
| | ) | Supreme Court No. S-16033 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-09463 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JAMES YASSICK, | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1618 – March 8, 2017 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Roberta C. Erwin, Palmier ~ Erwin, LLC, Anchorage, for Appellant. Justin R. Eschbacher, Law Offices of G.R. Eschbacher, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I. INTRODUCTION

Clarice Yassick challenges the superior court's division of marital property in her divorce case. For the reasons explained below, we affirm the superior court.

## II. FACTS

Clarice and James Yassick married in 1984. Between 2009 and 2010 Clarice started spending a lot of time with her friend and mentor Steve Jones. She worked part-time at Jones's auto repair shop and eventually purchased a building in

---

[*] Entered under Alaska Appellate Rule 214.

Arizona that she and Jones used to store and refurbish vintage cars. Citing irreconcilable differences, Clarice filed for divorce in 2012.

After a ten-day trial the superior court found that James was "the more credible of the parties" and therefore gave "his testimony the most weight in areas of conflict regarding the estate." The superior court then classified, valued, and distributed the marital estate, which totaled about $5.8 million.

Clarice now appeals, arguing that the superior court made a number of erroneous factual findings and abused its discretion by dividing the marital estate equally and denying her attorney's fees.

## III.  DISCUSSION

Clarice argues that the superior court erred in crediting James's testimony over hers with respect to:  (1) a 1991 Corvette; (2) a collection of coins and silver bars; (3) a diamond tennis bracelet; (4) a sale of raw aluminum; and (5) her dissipation of $338,282 in marital assets. But as we have stated before, "we 'will generally accept the determination[s] of witnesses' credibility that are made by the court as a trier of fact, since the court heard and observed the witnesses first hand.' "[1] The superior court did not find Clarice credible. We therefore reject Clarice's arguments with respect to those items.

Clarice next argues that the superior court erred when it found that a piece of real property in Wisconsin was James's separate property. The evidence showed that the property was originally purchased as an investment property in 1984 through James's business profit sharing plan (PSP) and that marital funds were not used in the purchase. The property was then transferred to James and Clarice jointly in 2010 as a distribution from the PSP. As we have previously noted, "holding joint title is not determinative of intent to treat property as marital"; rather "it creates rebuttable evidence that the owner

---

[1]    *Ethelbah v. Walker*, 225 P.3d 1082, 1092 (Alaska 2009) (quoting *Dodson v. Dodson*, 955 P.2d 902, 907 (Alaska 1998)).

intended the property to be marital."[2] The superior court concluded that despite the property being held in joint title, James did not intend the Wisconsin property to become marital because the parties were having severe marital problems when the property was transferred in 2010. This finding was not clearly erroneous and we therefore affirm the superior court's conclusion that the Wisconsin property is James's separate property.[3]

Clarice next argues that the superior court erred when it credited her side of the ledger with a monetary gift to a friend and an old snow machine trailer that she had given to Jones's auto repair shop because there was no evidence that she had wasted these marital assets. But the superior court did not find that those assets were wasted; rather it found that they were unilateral gifts and therefore "voidable at the option of the non-participating spouse."[4] Clarice has not explained why classifying those as unilateral gifts was improper. Therefore, this finding was not clearly erroneous and we affirm the superior court's conclusion.

Clarice further argues that the superior court erred in assigning her a rental credit of $11,434 for her use of a commercial building that was part of the marital estate. But James calculated the value of the rental credit based on the rent paid by third parties for use of a separate portion of the building and explained those calculations at trial. Clarice did not object to that testimony when it was introduced and has not explained on appeal why it was error for the superior court to rely upon it. Clarice also argues that she did not have money to pay the rent herself, that the funds from the current renters went

---

[2]     *Stanhope v. Stanhope*, 306 P.3d 1282, 1287 (Alaska 2013) (quoting *Johns v. Johns*, 945 P.2d 1222, 1225 (Alaska 1997)).

[3]     *See Beal v. Beal*, 88 P.3d 104, 110 (Alaska 2004) ("We will not set aside factual determinations made by the trial court . . . unless they are clearly erroneous.").

[4]     *Wright v. Wright*, 904 P.2d 403, 409 (Alaska 1995) (quoting *Brooks v. Brooks*, 733 P.2d 1044, 1055 (Alaska 1987)).

to the upkeep of the building, and that there was "no evidence of a scheme or intent" to defraud James. But these arguments are irrelevant to the superior court's underlying reasoning: that Clarice used the property to the exclusion of James, that Clarice benefitted from such use, and that the distribution of marital property should account for that benefit.[5] Clarice has failed to show that the rental credit was improper, and we therefore affirm the superior court's conclusion.

Clarice next argues that the superior court erred in failing to award her credit for payment of post-separation medical bills of $13,565.22. According to Clarice, James agreed to pay those bills and was then ordered to pay them by the superior court, but he never paid them. We have reviewed the record, however, and find Clarice's claims to be unsubstantiated. In a November 2012 hearing, James testified that he was willing to pay for certain medical bills, but only if the bills went through his lawyer and if Clarice filled out the appropriate insurance forms. The superior court then ordered that "[i]f money in advance is needed for [medical services], then the cost, if reasonable, will be advanced" by James.

A few months later Clarice asserted that James had not paid any of her medical bills and again asked the court to order James to pay them. James responded by disputing whether he was liable for those bills. The court ordered an early property distribution but did not otherwise respond to Clarice's request that it order James to pay her medical bills. At trial Clarice's attorney asked James if he was "willing to pay [the bills] as [he] stated [he] would in court." James responded, "I assume if I'm liable for those bills, yes."

Clarice's argument on this point is based entirely on her claim that James both agreed and was ordered to pay her medical bills. The procedural history we have

---

[5]     *See Sandberg v. Sandberg*, 322 P.3d 879, 890-91 (Alaska 2014).

just discussed, however, shows that James agreed to pay the bills only *if* he was liable for them, and the record contains nothing to show James had a legal requirement to pay the medical bills. We therefore affirm the superior court's conclusion.

Clarice next argues that the superior court abused its discretion in dividing the marital estate equally.[6] Rather than substantively challenging the superior court's equitable distribution analysis under AS 25.24.160(a)(4), Clarice asserts that it was error to divide the marital estate evenly *and* to refuse to award her attorney's fees. But as we have previously stated, "a party who receives a property settlement sufficient to cover incurred attorney's fees should expect to pay his or her own attorney's fees."[7] Clarice requested attorney's fees of approximately $250,000, a fraction of her total award in this case. We therefore conclude that the superior court did not abuse its discretion in not granting Clarice any attorney's fees.[8] Furthermore, we conclude that because Clarice does not substantively challenge the superior court's equitable distribution analysis, and because "[a]n equal division of the marital property is presumptively valid," the superior court did not abuse its discretion in dividing the marital estate evenly.[9]

Finally, Clarice argues that the superior court double-counted certain items on the property distribution spreadsheet and that some of those same items were her separate property, not marital property. But Clarice's argument on these points is

---

[6] *See Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013) ("We review . . . the equitable allocation of property[] for an abuse of discretion.").

[7] *Tybus v. Holland*, 989 P.2d 1281, 1289 (Alaska 1999).

[8] *See Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) ("In divorce proceedings, a trial court has broad discretion to award attorney's fees . . . .").

[9] *Green v. Green*, 29 P.3d 854, 860 (Alaska 2001).

cursory, and the portions of the record she cites do not support her allegations.  We therefore reject her arguments.[10]

## IV.    CONCLUSION

We AFFIRM the superior court's judgment in all respects.

---

[10]    *See Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal.").