**Allen W. HEUSTESS, Appellant,**

v.

**Bonnie J. KELLEY–HEUSTESS, Appellee.**

No. S–13375.

Supreme Court of Alaska.

Aug. 26, 2011.

464

Phyllis A. Shepherd, Law Office of Dan Allan and Associates, Anchorage, for Appellant.

D. Scott Dattan, Law Office of D. Scott Dattan, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

Raising over 50 separate points in this second appeal, Allen Heustess challenges the superior court's rulings on child support, property distribution, and attorney's fees.

1. 158 P.3d 827 (Alaska 2007).

We affirm almost all of the superior court's rulings, with the following exceptions: (1) Because the record does not support the superior court's finding regarding Allen's income for 1995 and because the superior court did not deduct federal income tax liability from Allen's gross income in its child support calculations for the years 1991 to 1996, we reverse the court's calculation of the child support arrearage; (2) because the superior court may have considered Allen's vexatious litigation conduct when it divided the marital estate and also considered it when it enhanced the award of fees against Allen, we remand the superior court's property division for additional findings; (3) we vacate the portion of the general fee award that is based on the parties' relative economic circumstances so it can be reconsidered after the court recalculates Allen's child support arrearage and reconsiders the overall property division. But we affirm the superior court's order enhancing the award of fees in Bonnie's favor, and we affirm the remaining rulings of the superior court in all respects.

## II. FACTS AND PROCEEDINGS

This is the second time this case has come to our court. The facts were discussed in greater detail in our first opinion *Heustess v. Kelley–Heustess* (*Heustess I*),[1] and are therefore only summarized here. Briefly, the parties are the parents of a son born in December 1991. Bonnie purchased a home in Chugiak in 1993 and she and Allen began living together in September 1997. Allen did not financially support the parties' child until the parties started living together. Bonnie and Allen married in June 1999. In October 2002 the house Bonnie purchased before marrying Allen was refinanced and Allen's name was added to the title. The proceeds from the refinance were mostly used to pay off marital debt, but one of Allen's pre-marital debts was also satisfied with the funds. The couple separated in late 2002 and Bonnie filed for divorce in October 2004.

The case was tried in the superior court in July 2005. Findings of fact, conclusions of law, and a decree of divorce were entered in

September 2005. The court awarded the family home to Bonnie and land in Palmer to Allen. The court found that the home was partially transmuted into marital property and valued it as of the date of separation. The marital estate was divided 60/40 in Bonnie's favor. The court ordered Allen to pay child support and granted sole legal and physical custody of the parties' son to Bonnie. Bonnie was also awarded $10,000 in attorney's fees.

In the first appeal, we held that the award of child support for the period before the parties married violated Allen's right to due process because Bonnie did not request this support until her rebuttal testimony.[2] We also determined it was error to find that only one-third of the equity in the marital home was transmuted into marital property and to value the house as of the date of the parties' separation rather than as of the date of trial. We vacated the property division and remanded the case to the superior court. Our decision acknowledged that an unequal division of the marital estate might be justified, but we instructed the superior court to consider rental income Bonnie received from a separate unit in the marital residence that she rented to third parties after the date of separation.[3] We also cautioned that the superior court should not "weight[ ] the scale against Allen" even though he misled Bonnie into refinancing the house shortly before the parties' separated.[4] Because we vacated the property division, we also vacated the superior court's award of attorney's fees. We instructed the court to follow the established two-step process for awarding attorney's fees on remand and allowed for the possibility that the court might increase its fee award based on Allen's vexatious litigation conduct.

On remand, Allen filed a motion to dismiss Bonnie's claim for child support for the peri-od 1991 to 1997, arguing that the statute of limitations barred this claim. The superior court denied the motion to dismiss and held an evidentiary hearing on the remaining issues in January 2008. In March 2008 the superior court granted Bonnie's motion to supplement the record with three exhibits and in October 2008 the superior court issued its second set of findings of fact and conclusions of law. The court valued the marital estate at $178,127 and awarded Bonnie 68% of it. Bonnie received $36,000 in personal property, the marital residence, and the land in Palmer. The court awarded Allen the remainder of the marital estate. It also concluded that Allen owed Bonnie a child support arrearage totaling $57,569.40. The value of the property in Bonnie's possession exceeded her share of the marital estate by $12,646. Rather than ordering Bonnie to pay this amount to Allen, the superior court reduced Allen's child support arrearage by $12,646.

In April 2009 the superior court awarded $31,307.50 in attorney's fees to Bonnie— $25,000 based on the parties' relative economic circumstances and $6,307.50 based on Allen's bad faith conduct and vexatious litigation.

Allen raises over 50 issues on appeal.[5]

## III. STANDARD OF REVIEW

Child support awards are reviewed for abuse of discretion; we do not set aside these awards unless a review of the record as a whole leaves us with a definite and firm conviction that a mistake has been made.[6] We review the equitable allocation of property for abuse of discretion and will not reverse a superior court's allocation unless it is clear-

---

**2.** *Id.* at 835.

**3.** This rental income was not accounted for in the superior court's 2005 findings. *Id.* at 833.

**4.** The marital home was transmuted because of Allen's contributions toward labor and maintenance, not because Allen's name was added to the title at the time of the refinance. *Id.* at 831–32.

**5.** Allen's issues on appeal fall into three categories: (1) issues definitively resolved in *Heustess I;* (2) issues raised but not adequately briefed, which are waived, *see Petersen v. Mutual Life Ins. Co. of New York,* 803 P.2d 406, 410–11 n. 8 (Alaska 1990); and (3) issues that are properly raised and briefed on appeal.

**6.** *Laughlin v. Laughlin,* 229 P.3d 1002, 1004 (Alaska 2010) (citing *Harvey v. Cook,* 172 P.3d 794, 797 (Alaska 2007)).

ly unjust.[7] We review "legal determinations relevant to property division and child support based on an independent judgment standard."[8] We review findings of fact for clear error.[9] A finding is clearly erroneous if "we are left with a definite and firm conviction that the trial court has made a mistake."[10]

We review de novo a superior court's decision to deny a motion to dismiss.[11] We will uphold an award of attorney's fees absent abuse of discretion[12] and will not reverse a fee award unless it is "manifestly unreasonable."[13]

## IV. DISCUSSION

### A. Child Support

**1. The superior court did not err when it ruled that Bonnie's claim for child support is not barred by the statute of limitations.**

Allen argues that the superior court erred by denying his motion to dismiss Bonnie's claim for child support for the period from 1991 to 1997 because the 10-year statute of limitations in AS 09.10.100 bars the claim. Bonnie contends that the statute of limitations does not bar the claim because AS 09.10.140 tolls the statute of limitations during a child's minority.

Generally, the "failure to file a complaint within the statute of limitations is grounds for a Civil Rule 12(b)(6) motion to dismiss."[14] "We exercise our independent judgment when interpreting and applying statutes of limitations."[15]

Alaska Statute 09.10.100 provides that "[a]n action for a cause not otherwise provided for may be commenced within 10 years after the cause of action has accrued." This general provision applies to Bonnie's claim for child support because this claim is "[a]n action for a cause not otherwise provided for" by a specific statute of limitations. But, as Bonnie suggests, this is the beginning, not the end, of the statute of limitations analysis because a limitations period may be tolled under various circumstances. The dispositive consideration here is whether a general limitation period is tolled during a child's minority.

Alaska Statute 09.10.140 addresses tolling the statute of limitations for claims belonging to a child during the child's minority. In relevant part, the statute states that "if a person . . . [is] under the age of majority . . . the time [during which the person is under the age of majority] is not a part of the time limit for the commencement of the action." In *State, Department of Revenue, Child Support Enforcement Division ex rel. Valdez v. Valdez*, we stated that "[t]he right to [child] support is that of the child."[16] And in *Grober v. State, Department of Revenue, Child Support Enforcement Division ex rel. C.J.W.*, we held that the tolling provision in AS 09.10.140 applies even when another can

7. *Green v. Green*, 29 P.3d 854, 857 (Alaska 2001).

8. *Heustess I*, 158 P.3d at 831.

9. *Inman v. Inman*, 67 P.3d 655, 658 (Alaska 2003).

10. *Id.*

11. *Adkins v. Stansel*, 204 P.3d 1031, 1033 (Alaska 2009).

12. *Carr v. Carr*, 152 P.3d 450, 457 (Alaska 2007).

13. *Id.; Welcome v. Jennings*, 780 P.2d 1039, 1043 (Alaska 1989) (citing *Alaska Placer Co. v. Lee*, 553 P.2d 54, 63 (Alaska 1976)).

14. *Hutton v. Realty Executives, Inc.*, 14 P.3d 977, 979 (Alaska 2000).

15. *Koss v. Koss*, 981 P.2d 106, 106–07 (Alaska 1999) (quoting *McDowell v. State*, 957 P.2d 965, 968 n. 4 (Alaska 1998)).

16. 941 P.2d 144, 154 n. 14 (Alaska 1997). Many other courts have also held that the right to support belongs to the child. *See, e.g., Miller v. Atkinson*, 810 So.2d 799, 800 (Ala.Civ.App.2001); *Fonken v. Fonken*, 334 Ark. 637, 976 S.W.2d 952, 955 (1998); *Serio v. Serio*, 830 So.2d 278, 280 (Fla.Dist.App.2002); *In re Marriage of Vandervoort*, 39 Kan.App.2d 724, 185 P.3d 289, 293 (2008); *Kibble v. Weeks Dredging & Constr. Co.*, 161 N.J. 178, 735 A.2d 1142, 1150 (1999); *Martin v. Brock*, 55 P.3d 1095, 1098 (Okla.Civ.App. 2001); *Anderson v. Thompson*, 176 P.3d 464, 474 n. 6 (Utah App.2008); *In re Marriage of Pippins*, 46 Wash.App. 805, 732 P.2d 1005, 1007 (1987); *State ex rel. Shepard v. Holland*, 219 W.Va. 310, 633 S.E.2d 255, 259 (2006) (per curiam).

bring the action on behalf of a minor.[17] We have recognized that the child support guidelines in Alaska Civil Rule 90.3 "reflect a paternalistic view toward child support agreements." [18] In light of these considerations, we hold that under AS 09.10.140 the statute of limitations for child support actions is tolled during the child's minority. Other states have reached the same conclusion.[19] Bonnie's claim for child support is not barred by the statute of limitations, and it was not error for the superior court to deny Allen's motion to dismiss.[20]

### 2. The calculation of Allen's child support arrearage was erroneous, in part.

### a. Allen was not entitled to credit for child support payments made on behalf of a child from a previous relationship because the payments were due before the parties' son was born.

██ Between 1988 and 1994, Allen paid a total of $9,851.92 in child support for a daughter from a prior relationship. Allen argued that all but one of these child support payments should be deducted from his gross income before calculating the amount of the child support arrearage he owes for support of the parties' son. The superior court only deducted $825 from Allen's gross income.

Allen maintains on appeal that he is entitled to deduct $9,462 from his gross income before calculating the arrearage; Bonnie counters that Allen's argument is unsupported by reason or legal authority. We agree with Bonnie.

In 1988 a Wyoming court ordered Allen to pay child support for his daughter beginning January 1, 1988. The initial order was for $225 per month but it was increased to $275 per month beginning April 1, 1991. Allen's daughter was adopted by another person on March 3, 1992 and Allen's continuing financial obligations to her were extinguished at that time. Subsequently, the State of Alaska collected $8,912.44 from Allen in past due support and sent the funds to the State of Montana. In all, Allen paid $9,626.92 toward supporting his daughter after the parties' son was born in December 1991.[21] But only $825 of this total *accrued* after the parties' son was born; the rest was due to be paid before December 1991. The superior court deducted $825 from Allen's gross income in its child support calculation; $275 per month for December 1991, January 1992, and February 1992. Allen argues that the superior court erred by not deducting all of the child support arrearage that accrued for the benefit of his daughter prior to her adoption, even

---

**17.** 956 P.2d 1230, 1233 (Alaska 1998); *see also Hanson v. Kake Tribal Corp.*, 939 P.2d 1320, 1326 (Alaska 1997) ("[Alaska Statute 09.10.140(a) ] applies to minors, even those with guardians.... It can be regarded as fundamentally unfair to a minor to saddle the minor with the consequences of a custodian's neglect.").

**18.** *Laughlin v. Laughlin*, 229 P.3d 1002, 1004 (Alaska 2010) (citing *Cox v. Cox*, 776 P.2d 1045, 1048 (Alaska 1989)).

**19.** *See Perez v. Singh*, 21 Cal.App.3d 870, 97 Cal.Rptr. 920, 921 (1971) (citing *Fernandez v. Aburrea*, 42 Cal.App. 131, 183 P. 366, 367 (1919)) ("[T]he obligation of a father to support his child, whether legitimate or illegitimate, is a continuing duty against which the statute of limitations does not run during the time the child needs such support."); *Vice v. Dep't of Human Servs., State of Miss.*, 702 So.2d 397, 400 (Miss.1997) (citing *Wilson v. Wilson*, 464 So.2d 496, 498–99 (Miss. 1985)) ("[W]here a minor holds the legal right, such as to child support from a parent, the

statute of limitations does not begin to run until the disability of minority is removed.").

**20.** Allen also argues that Bonnie's claim is barred by res judicata and that remand is necessary because the superior court did not articulate its reasons for denying the motion to dismiss. But Bonnie raised her claim for premarital child support in the original trial—albeit belatedly— and on appeal we remanded that issue. *Heustess I*, 158 P.3d 827, 835 (Alaska 2007). Because this claim involves a subsequent appeal in the same suit and does not expand the issues in the case, the claim is not precluded. Allen is correct that the superior court did not articulate its reasons for denying his motion to dismiss, but the superior court was not obligated to do so. We independently review the denial of a motion to dismiss de novo so the lack of a written decision from the superior court on this motion did not prejudice Allen.

**21.** In addition to the funds collected by the State of Alaska, Allen made three payments directly to

those payments that became due before the parties' son was born.[22]

■ For purposes of calculating child support, Rule 90.3(a) allows a non-custodial parent to deduct from his or her gross income the amount of support paid to a child from a previous relationship.[23] Neither Rule 90.3 nor the commentary to the rule expressly limits this deduction to the amount actually accrued and paid during the time the support obligation for an earlier-born child overlaps with the support obligation for a later-born child. But this application of the rule is consistent with the rule's purpose: "to ensure that child support orders are adequate to meet the needs of children, subject to the ability of parents to pay."[24] We agree with the superior court that "[t]o give [Allen] a deduction for child support collected for his daughter ... that was owed before [the parties' son was born], but not collected until after [Allen's daughter's] adoption, would mean that [the parties' son] is being penalized by having to essentially finance his father's belated payment for [the daughter's] support."[25] We conclude that the superior court correctly limited Allen's deduction to $825.

### b. It was error not to deduct federal income tax liability from Allen's gross income.

■ Allen argues that the superior court erred by failing to deduct federal income tax

liability from his gross income when it calculated his child support arrearage for the years 1991 to 1996.

■ One of the mandatory deductions in Rule 90.3's child support formula is the non-custodial parent's "federal ... income tax." The superior court's finding for 1997 characterized Allen's earnings of $29,963 as "adjusted gross income ... according to his 1997 federal income tax return," but it does not appear that the superior court deducted federal income tax liability from Allen's gross income for any of the years before 1997. This may have been because Allen could not show that he actually paid taxes for those years, but the mandatory deductions set forth in Rule 90.3(a)(1)(A) are based on liability, not the amount actually paid.[26] The mandatory deductions in Rule 90.3 must be made before child support is calculated. We therefore remand the calculation of Allen's child support arrearage in accordance with Rule 90.3(a)(1)(A).

### c. The finding regarding Allen's 1995 income is not supported by the record.

■ Allen argues that the superior court's finding that he earned $40,000 in 1995 is clearly erroneous. We agree that this finding is not supported by the record.

the State of Montana, including one $225 payment in January of 1988.

22. On appeal, Allen asked that his deduction be increased by $8,912.44, but he also asked for a total deduction of $9,462.44. It is undisputed that Allen paid $9,851.92 to support his daughter between 1988 and 1994. Except for one payment of $225 made in 1988 before the parties' son was born, we understand Allen to seek credit for all of the payments he made to support his daughter, or $9,626.92.

23. Alaska R. Civ. P. 90.3(a) instructs that a non-custodial parent's adjusted annual income is determined by subtracting from total gross income several mandatory deductions, including "child support and alimony payments arising from prior relationships which are required by other court or administrative proceedings and actually paid." Alaska R. Civ. P. 90.3(a)(1)(C).

24. Alaska R. Civ. P. 90.3., cmt. I.B.

25. The flaw in Allen's argument is clear when taken to its logical end. A parent could receive a 100% mandatory deduction if enough money was paid to support a child from a previous relationship, even if the payments accrued many years before and even if the parent was fully able to support a later-born child.

26. Alaska R. Civ. P. 90.3(a)(1)(A)(i); *Bergstrom v. Lindback*, 779 P.2d 1235, 1236 (Alaska 1989) ("[A]ctual tax liability under existing Internal Revenue Service regulations ... is the proper basis for determining the amount to be deducted from his income."); *see also* Jeff Atkinson, MODERN CHILD CUSTODY PRACTICE, § 11–26 (2d ed. 2000). To the extent the court imputed income to Allen from 1991 to 1996, it should have allowed mandatory deductions for federal income tax. *Shepherd v. Haralovich*, 170 P.3d 643, 650 (Alaska 2007) (citing *Rodvik v. Rodvik*, 151 P.3d 338, 351 (Alaska 2006)) (ordering court to deduct federal income tax from imputed income when calculating adjusted annual income under Rule 90.3).

The superior court found that Allen "testified he earned $40,000 in 1995," and used this figure as the basis for calculating Allen's child support obligation. But as Allen points out on appeal, his trial court testimony was that he earned approximately $20,000 in 1995, and he filed W–2 forms and a Social Security statement corroborating this testimony. Although at one point Allen testified that he had "no clue" what he earned in 1995, neither Bonnie's brief on appeal nor the superior court's findings identify a place in the record supporting the finding that he earned $40,000. Allen testified that he did not work odd jobs around that time, and Bonnie did not testify that she had firsthand knowledge of Allen's income in 1995. Allen lived out of state that year. The superior court found "the evidence (including [Allen's] testimony) shows he worked 'under the table' and likely earned income that was not reportable for many years." But aside from the court's general finding that Allen's testimony was not credible, the source of the court's finding that Allen earned income "under the table" is unclear. We conclude that the determination of Allen's 1995 income must be reversed and remanded for additional findings.[27]

### d. The superior court did not err when it decided that Allen's child support obligation began when the parties' son was born.

■ Allen argues that the superior court erred when it decided that his child support obligation began the month the parties' son was born, December 1991. He argues that his obligation did not begin until February 2008, when the superior court first ruled in Bonnie's favor on the issue of premarital child support. Allen contends that the court's 2008 ruling was the first time he had notice of his support obligation for the years 1991 to 2002.

■ Allen's argument is contrary to Alaska law. We have repeatedly stated that "the duty of parental support begins on the date of [a] child's birth."[28] We have also recognized that "[r]egardless of whether a [child] support order exists, a parent is obligated both by statute and at common law to support his or her children,"[29] and that "a parent's duty of support commences at the date of the birth of the child."[30] To the extent Allen makes a due process argument based on lack of notice, his claim fails because the duty of support commences at birth, and thus a father's actual knowledge of the birth of a child for whom he bears legal responsibility is adequate notice of the accruing child support debt.[31] Allen does not dispute that he knew of his son's birth. The superior court did not err by starting Allen's child support obligation in December 1991, when the parties' child was born.

### e. The superior court did not err by allowing interest to accrue while Allen and Bonnie were living together.

■ Allen argues that the superior court erred by awarding prejudgment interest on his child support arrearage for the period from September 1997 until October 2002, when Allen and Bonnie lived together and he was contributing toward the child's support.

Alaska Statute 25.27.225 provides that child support payments due pursuant to a child support order are treated as judgments; as each periodic payment becomes

---

**27.** On appeal, Allen argued that the superior court imputed income to him "in many instances," including years 1991 and 1995. This is incorrect. The superior court made findings regarding Allen's gross income for each of the years 1991 through 1996. Allen correctly argues that where a court imputes income pursuant to Rule 90.3(a)(4), mandatory deductions must be made pursuant to Rule 90.3(a)(1). We recognize that the evidence made it difficult to determine Allen's actual income for 1995. On remand, if the superior court imputes income to Allen for 1995, he shall be entitled to the mandatory deductions in Rule 90.3(a)(1).

**28.** *See, e.g., Skinner v. Hagberg,* 183 P.3d 486, 490 (Alaska 2008) (citing *Rubright v. Arnold,* 973 P.2d 580, 586 (Alaska 1999)).

**29.** *Benson v. Benson,* 977 P.2d 88, 92 (Alaska 1999) (citing *Crayton v. Crayton,* 944 P.2d 487, 489 (Alaska 1997)) (internal quotation marks omitted).

**30.** *Koller v. Reft,* 71 P.3d 800, 806 (Alaska 2003) (citing *Rubright,* 973 P.2d at 586) (internal quotation marks omitted).

**31.** *Id.*

due and goes unpaid, it becomes a judgment. Interest for past due child support payments arising from court orders is controlled by AS 25.27.025. But where a support arrearage accrues before a child support order is entered, prejudgment interest is assessed at the rate provided by AS 09.30.070.[32]

■■■ Allen offers no principled reason that interest should not be due on the child support obligation that accrued prior to the parties' cohabitation period and went unpaid during the years the parties lived together. "The recognized purposes of awarding prejudgment interest are to compensate the successful party for lost use of the money and to prevent unjust enrichment of the unsuccessful party who had use of the money." [33] We conclude that the question is not whether the parties were living together, but whether Allen's prior child support obligation had been fulfilled. Because Allen failed to support the parties' son from 1991 to September of 1997 and this arrearage remained unpaid while the parties were married, we reject Allen's argument that the court abused its discretion by awarding prejudgment interest for the period from September 1997 to October 2002.

The child support calculation in this case was complicated. The superior court correctly decided that Allen was not entitled to credit for payments made on behalf of another child because that obligation accrued before the parties' son was born. The court did not err when it decided when Allen's child support obligation began, or by allowing in-terest to accrue while the parties lived together. But because of the need for additional findings regarding Allen's 1995 income and the need to include mandatory deductions for federal income tax liability in the years 1991 to 1996, we reverse the superior court's calculation of Allen's child support arrearage and remand for proceedings consistent with this opinion.[34]

## B. Property Division

In *Heustess I*, we reversed the superior court's distribution of marital property.[35] After considering additional evidence on remand, the superior court awarded Bonnie 68% of the marital estate.[36] Allen claims the superior court erred by awarding a larger share of the marital estate to Bonnie. He also contends the unequal property division was an abuse of discretion because the court failed to make accurate *Merrill* findings.[37] Allen challenges nearly all of the court's factual findings relating to the division of property.

■■■ The superior court has broad discretion to divide property in divorce cases.[38] We review the superior court's property division under the abuse of discretion standard and will not overturn a property division "unless it is clearly unjust." [39] Alaska Statute 25.24.160(a)(4) codifies several factors for courts to consider in order to "fairly allocate the economic effect of divorce." These statutory factors are not exhaustive and the superior court need not make findings pertaining to each factor,[40] but it must make sufficient

**32.** *Ogard v. Ogard*, 808 P.2d 815, 817 (Alaska 1991).

**33.** *Id.* (citing *Morris v. Morris*, 724 P.2d 527, 529–30 (Alaska 1986)).

**34.** Allen has waived the other points he raised on appeal relating to child support payments because he failed to brief them. *Katmailand, Inc. v. Lake & Peninsula Borough*, 904 P.2d 397, 402 n. 7 (Alaska 1995) (citing *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991)).

**35.** 158 P.3d 827, 833 (Alaska 2007).

**36.** Allen incorrectly argues that Bonnie received 75% of the marital estate in the 2008 property division. In fact, the superior court decided the total marital estate had a value of $178,127, and awarded Bonnie assets totaling $133,772. This represents 75% of the marital estate, but Allen fails to account for the court giving him a $12,646 credit against his child support arrearage. Once this portion of Allen's child support arrearage is deducted from the assets awarded to Bonnie, her award is $121,126, or 68% of the marital estate's total value.

**37.** *Merrill v. Merrill*, 368 P.2d 546, 547 n. 4 (Alaska 1962).

**38.** *Abood v. Abood*, 119 P.3d 980, 984 (Alaska 2005).

**39.** *Green v. Green*, 29 P.3d 854, 857 (Alaska 2001).

**40.** *Nicholson v. Wolfe*, 974 P.2d 417, 422 (Alaska 1999).

findings to "indicate the factual basis for the conclusion reached."[41] The superior court's factual findings are viewed in the light most favorable to the prevailing party below.[42] We will not reverse a superior court's factual determinations relating to equitable division of marital property except upon a finding of clear error.[43]

In determining the appropriate property division, the superior court considered the factors set forth in AS 25.24.160(a)(4) and concluded that an unequal property division was warranted. The court considered Bonnie's serious long-term health issues, the parties' respective ages, Allen's greater present income and greater future earning capacity, Bonnie's greater share of child-rearing duties, the parties' respective contributions toward maintaining the marital home, Bonnie's rental income during the post-separation period, and Bonnie's payments for repairs she made during the post-separation period. After reviewing the record, we conclude that the court did not abuse its discretion by awarding Bonnie a larger share of the marital estate, but because we cannot determine whether it double-counted Allen's vexatious litigation conduct, we remand for additional findings.

## 1. The superior court did not err in its findings concerning Bonnie's income and health.

■ Allen argues the superior court committed clear error by finding Bonnie "worked two jobs in 2007, but can no longer do so due to her health." He also argues that the court committed clear error by finding that Bonnie's "income was constrained by her injuries" because she was employed as a waitress, clerk, and airport screener, that it was error for the court to find that Bonnie "has serious long-term health issues that limit her ability to make a living," and that it was clear error to find that as a waitress Bonnie "consistently reported income from tips in excess of the required 8% of her gross sales." Allen's arguments are precluded by the superior court's previous findings which we upheld in the first appeal.[44] There, we said, "[t]he record shows that Allen is healthier and has greater earning capacity than Bonnie" and "Bonnie's injuries will probably require more medical care, and they limit her future employment options."[45] It is true that on remand the superior court made more specific findings regarding the parties' respective earning histories, but Allen does not point to any error in the court's most recent findings that undermine its earlier findings that Allen is younger, has superior earning capacity, better health, and a higher income than Bonnie. These findings are supported by the record, and they are the salient factors for purposes of reviewing the court's overall division of the marital estate.[46]

Allen also challenges the superior court's 2008 finding that "[t]here is not much prospect for [Bonnie] to increase her income" as unsupported by the record. He notes that at TSA Bonnie "earned $11 per hour and a 25% COLA adjustment to her salary.... She also said she was going to get a 1% raise." We disagree with Allen that the court's finding is

41. *Id.*

42. *Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003).

43. *McCoy v. McCoy*, 926 P.2d 460, 463 (Alaska 1996) (citing *McDaniel v. McDaniel*, 829 P.2d 303, 305 (Alaska 1992)).

44. *Heustess I*, 158 P.3d 827, 833–34 (Alaska 2007).

45. *Id.* at 833.

46. Allen also argues that the superior court erred on remand when it determined Bonnie's income for 2005 and 2006. But the court's finding for 2005 is supported by Bonnie's testimony and the W–2 form she introduced at trial. Bonnie's 2006 W–2 form shows she earned $24,715.51 at Gwen-

nie's; once withheld taxes are subtracted the total is $20,598.76. We agree that it is unclear how the court concluded that Bonnie earned "approximately $7,000 from TSA" in 2006. The record does not contain tax forms for her work at TSA and her testimony was that she began working there in August at the rate of $23,000 per year plus 24% cost of living adjustment (COLA). Assuming she worked a full month in August—the record does not indicate exactly when she began—Bonnie would have earned pro rata $9,583 plus 24% COLA for 2006. Still, any error was harmless; the record supports the court's finding that Bonnie's 2006 income was less than Allen's. Allen's argument that the court failed to consider PFD income is without merit; the court expressly stated that it took PFD income into account.

unsupported. First, there was no obligation for the court to consider Bonnie's 2008 income. This case was originally tried in 2005 and the court made findings concerning Allen's income and earning capacity that we affirmed on appeal. Second, Allen incorrectly summarizes the testimony Bonnie gave at the evidentiary hearing held on remand. Bonnie stated she would receive a 1% raise but lose 2% of her COLA, and that her injuries limit her ability to work overtime. In context, the finding indicates that it is unlikely that Bonnie will significantly increase her income. A possible 1% raise does not render the court's finding about Bonnie's future employment prospects clearly erroneous.

Allen also argues the court abused its discretion by not calculating Bonnie's 2007 income because "[i]t is error to fail to make a finding as to one party's most current earning capacity, especially when it was available from the record." The superior court's 2008 findings included a determination of Allen's 2007 income, but the superior court struck its finding concerning Bonnie's 2007 income with a handwritten edit. It is unclear why this finding was crossed out, but we conclude that this is of little significance. As we have explained, the 2005 findings established that Allen's income and earning potential are higher than Bonnie's. There was no need to make new findings on remand regarding the parties' respective earnings or earning capacities.[47] The court made "sufficiently detailed and explicit findings 'to give [this] court a clear understanding of the basis of [its] decision, and to enable [this court] to determine the ground on which the trial court reached its decision.' "[48]

## 2. The superior court's finding relating to the parties' relative earning capacities was not clearly erroneous.

■ Allen challenges the superior court's 2008 finding that his earning capacity has been "much greater" than Bonnie's and that the difference between their relative earnings in the future "will probably be greater." Even if Allen earned $20,000 in 1995 rather than $40,000, it is undisputed that Allen's reported income has been significantly greater than Bonnie's. Allen narrowly focuses on challenging the court's statement that "[h]e has consistently earned two or three times as much" as Bonnie. Although this estimated comparison of the parties' respective incomes is only partially supported in the record, the court's overall finding—that Allen has earned and will continue to earn substantially more than Bonnie—is not clearly erroneous. Allen's lack of medical benefits and ongoing child support obligations will likely strain his financial outlook, but we are persuaded that Bonnie's lower income, work-limiting injuries, and age support the court's conclusion that the gap in the parties' income will likely grow wider in the future.

## 3. The superior court's consideration of Bonnie's rental income was not an abuse of discretion.

■ After the parties separated, Bonnie rented a separate unit in the marital home and received some rental income from her tenants. This income was not accounted for by the court's 2005 findings, and in our first decision we directed the superior court to consider it on remand.[49] In 2008, the superior court made findings concerning the rent received and costs to repair the rental unit and concluded "[s]ince Bonnie maintained the asset from separation through divorce ... neither ... rents nor the rental value of the residence itself, although considered by this court, measurably affect the court's analysis of the appropriate distribution of the marital estate." Allen argues that the superior court did not fulfill our directive on remand. He

**47.** As we have stated, "[s]uccessive appeals should narrow the issues in a case, not expand them." *State Commercial Fisheries Entry Comm'n v. Carlson,* 65 P.3d 851, 873–74 (Alaska 2003).

**48.** *Merrill v. Merrill,* 368 P.2d 546, 548 (Alaska 1962) (quoting *Irish v. United States,* 225 F.2d 3,

8 (9th Cir.1955)); *see also McCoy v. McCoy,* 926 P.2d 460, 463–64 (Alaska 1996).

**49.** We stated, "On remand, the court should reconsider whether and to what extent an unequal division of the parties' assets should be made in view of the rental income available to Bonnie...." *Heustess I,* 158 P.3d at 833.

raises a number of challenges to the superior court's consideration of Bonnie's rental income; none of them is sufficient to conclude that the superior court's treatment of the rental income for purposes of property distribution was an abuse of discretion.

Allen first disputes the superior court's use of the word "measurably" in its finding that the rents did not "measurably affect the court's analysis of the appropriate distribution of the marital estate." He faults the court for not describing its method of measurement. But Allen misconstrues the court's finding. The use of the word "measurably" here does not require an actual calculation; it only describes a degree of influence on the court's decision.

Next, Allen claims the superior court failed to value the rental income. More specifically, though the court found that the unit rented for $650 for most of the months in question, Allen argues that the court should have decided whether the unit was rented at its market value. We have suggested a court may value rental units at the price for which they are rented.[50] And there was no showing that Bonnie had an incentive to rent the unit below the market rate. We reject Allen's argument; the express finding that the unit was rented for $650 per month included the implicit finding that the unit was valued at $650 per month.[51]

Allen also argues that the superior court erred by failing to find that Bonnie depleted the marital estate because Bonnie: (1) did not at all times rent the unit after the date of separation; (2) rented the unit to her daughter for less than $650 per month; and (3) lived in the unit for a certain period of time. Alaska Statute 25.24.160(a)(4)(E) permits courts in property division cases to consider "the conduct of the parties, including wheth-er there has been unreasonable depletion of marital assets." A hallmark of unreasonable depletion is misconduct or "an intent to deprive the other spouse of the other's share of the marital property."[52] Here, the evidence was that Bonnie rented the unit for all of 2005 at the rate of $650 per month. The tenant continued on until October of 2006, when the septic system flooded the unit and forced the tenant to move out. After that, Bonnie rented the unit to her adult daughter for a short time at the rate of $500 per month because her daughter had no other place to live. Bonnie then moved into the unit with the parties' child because a problem with "black mold" in the private residence made it impossible to continue living there. There is no evidence that Bonnie failed to rent the unit at all times or at market value with the intent to deprive Allen of his share of the rents.

■ Allen argues the court abused its discretion by failing to consider that Bonnie's post-separation rental income was a marital asset that earned prejudgment interest. Relying on *Morris v. Morris*[53] he claims the court should have credited him with a percentage of the rental income and prejudgment interest. Allen is incorrect. A court has discretion to give credit to the party that maintains an asset post-separation.[54] Although Bonnie did not share the rents with Allen in the post-separation period, she alone bore the cost of maintaining the unit. Allen admitted in his testimony that he did not help Bonnie repair the rental unit or make mortgage payments post-separation. With respect to prejudgment interest, we have held that trial courts have broad discretion in making such awards.[55] The case Allen cites

**50.** *Korn v. Korn*, 46 P.3d 1021, 1023 (Alaska 2002) ("Because the parties had never previously rented out their residence and evidently had no plans to rent it, the home had no clearly established rental value.").

**51.** Indeed, Allen seems to concede in his brief that "the rental unit was capable of being rented at $650 per month."

**52.** *Jones v. Jones*, 942 P.2d 1133, 1140 (Alaska 1997).

**53.** 724 P.2d 527, 530 n. 11 (Alaska 1986).

**54.** *Berry v. Berry*, 978 P.2d 93, 96 (Alaska 1999).

**55.** *See Dixon v. Dixon*, 747 P.2d 1169, 1172 (Alaska 1987) (holding that superior court need not justify its decision to award or withhold prejudgment interest).

states as much.[56] In light of Bonnie's unassisted efforts to maintain the rental unit post-separation, the court did not abuse its discretion by not awarding Allen half the post-separation rents or prejudgment interest on the rental income.

█ Allen also raises concerns over confusion relating to the house's mold problem and repairs to the septic tank. The 2008 findings made reference to a mold problem in the rental unit. Allen is correct that the mold problem was in the personal residence, not the rental unit, but since Bonnie and her child had to move from the personal residence to the rental unit as a result of the mold problem, the effect of the mold problem was the same: it prevented Bonnie from renting the rental unit.

Finally, Allen argues that the court miscalculated the costs of repair in relation to rents. We are not persuaded by this argument. Our review of the record convinces us that the testimony supported the superior court's finding that the cost of the repairs did exceed the rents received during 2005–06.[57] We find no merit to Allen's challenges to the findings pertaining to Bonnie's rental income.

### 4. The superior court did not err in its consideration of the home refinancing.

█ Allen challenges the superior court's finding that he "received greater benefit from the refinance than Bonnie did." In support of this point, Allen argues that the superior court failed to recognize that part of the refinancing was used to pay off $20,412 Bonnie owed on her Chevrolet Blazer. This issue was resolved by the first appeal. We explained in *Heustess I* that the vast majority of the refinancing proceeds were used to pay off marital debts. We said, "with the exception of $1,400 that the [superior] court found went to pay a pre-existing debt of Allen's, all of the proceeds of the refinancing were used for marital purposes—mainly to pay debts on marital property." [58] The Blazer was marital property, regardless of which party typically used it.[59] In light of the $1,400 benefit to Allen, the superior court's finding that Allen received a greater benefit from the refinance than Bonnie was not clearly erroneous.

### 5. If the superior court considered Allen's vexatious litigation conduct when it divided the marital estate and when it enhanced the fee award, it erred.

█ Allen contends the superior court erred in considering his vexatious litigation conduct when it awarded Bonnie a larger share of the marital estate in its 2008 property division. He argues that the superior court erred "to the extent that the court used conduct after the marriage to justify a disproportionate award to the other spouse."

The superior court listed a number of factors it considered when it determined the division of marital property under AS 25.24.160(a)(4). Among these factors, the court noted "neither party has unreasonably depleted marital assets." But in the same paragraph, where the court itemized the findings it did consider when it divided the estate, the findings state "[Allen's] conduct during litigation has been vexatious. [Allen] has engaged in a number of litigation strategies that have unnecessarily increased attorney's fees, such as his refusal to return the truck that belonged to [Bonnie's son] Matt and his refusal to provide basic pretrial discovery."

Alaska Statute 25.24.160(a)(4)(E) states that in dividing marital property a superior court may consider "the conduct of the parties, including whether there has been unreasonable depletion of marital assets." We have stated that "a court may take into account economic misconduct under subpart

---

**56.** *Morris,* 724 P.2d at 530 (emphasizing that superior court is not required to award prejudgment interest but rather has broad discretion to do so).

**57.** The septic repair cost $3,700. Bonnie took out a $30,000 second mortgage and paid $9,000 out-of-pocket to finance the work to remedy the mold problem. The total rent received in 2005 and 2006 was approximately $13,650.

**58.** *Heustess I,* 158 P.3d 827, 831–32 (Alaska 2007).

**59.** The superior court treated the Blazer Bonnie drove as marital property subject to division.

(E), but it may not consider a party's moral or legal marital failings which do not amount to economic misconduct." [60] In *Oberhansly v. Oberhansly*,[61] we explained that we consistently have considered the conduct of the parties with respect to the marital property and debts after separation a relevant factor in determining a just division. But we have also cautioned that in considering economic misconduct of a party, "the trial court should be on guard not to 'double count.'"[62]

Here, conduct the court included in its list of the factors that warranted an unequal property division—the failure to return a truck that belonged to Bonnie's son Matthew and the failure to comply with discovery requests—is the same conduct the court relied upon to order enhanced attorney's fees. The superior court has broad discretion in fashioning a property division,[63] but we cannot tell whether the court double-counted Allen's vexatious litigation conduct by considering it in the overall property division and in its award of enhanced fees. We therefore remand the superior court's property distribution for additional findings. On remand, the superior court should reconsider its distribution of the marital estate without considering Allen's vexatious litigation conduct as a factor. Based upon the other *Merrill* factors cited in the 2008 findings, the court may decide that the division remains fair and equitable, or it may adjust the division if it is necessary to do so to "fairly allocate the economic effects of divorce" under AS 25.24.160. To be clear, we do not require or anticipate an additional evidentiary hearing on remand. The superior court should reconsider the property division based on the remaining *Merrill* factors cited in its 2008 findings of fact and conclusions of law, and evidence already admitted into the record.[64]

## C. Motion To Supplement The Record

▮ Allen argues the superior court erred by granting Bonnie's motion to supplement the record. We disagree.

More than a month after the court's hearing on remand, Bonnie moved to supplement the record with (1) a letter from Ron Eagley stating that "[d]ue to a conflict of interest in scheduling" Bonnie was "no longer an on call employee of Gwennie's"; (2) a letter from Kirby Holtman of Peters Creek Chiropractic stating that Bonnie's injuries prevented her from working at Gwennie's; and (3) invoices from Rick's Home Improvements. The court granted the motion. Denying Allen's motion to reconsider, the court stated it "granted [Bonnie's motion] primarily because the court also permitted [Allen] to supplement the record after trial.... The court, in making its final determination, did not rely to any appreciable extent on [Bonnie's] supplemental exhibits."

Allen claims the court abused its discretion "because issues on employment, health and alleged home repairs were all germane to property division statutory factors under AS 25.24.160." He states the court violated his right to due process by allowing Bonnie to supplement the record.

▮ The right to due process is violated if a party is deprived of "the opportunity to be heard at a meaningful time and in a meaningful manner."[65] We have concluded that a party's due process rights are violated when the record is supplemented with a new rationale to which the party was not able to respond.[66] We have likewise determined

---

60. *Jones v. Jones*, 942 P.2d 1133, 1139 (Alaska 1997). In *Jones* we recognized that the concept of economic misconduct "is broad enough to include social or moral misconduct which leads to an unreasonable depletion of marital assets, such as domestic violence." *Id.*

61. 798 P.2d 883, 885 (Alaska 1990).

62. *Id.* at 1141.

63. *See, e.g., Abood v. Abood*, 119 P.3d 980, 984 (Alaska 2005).

64. By failing to brief any of the other points on appeal relating to property division, Allen has waived these appeal issues. *Katmailand, Inc. v. Lake & Peninsula Borough*, 904 P.2d 397, 402 n. 7 (Alaska 1995) (citing *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991)).

65. *Matson v. State, Commercial Fisheries Entry Comm'n*, 785 P.2d 1200, 1206 (Alaska 1990) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

66. *Id.*

that a party's due process rights are violated when the record is supplemented with evidence that the party does not have an opportunity to rebut and the evidence serves as the basis for the ultimate decision.[67]

But we reject Allen's argument that his right to due process was violated when the court allowed Bonnie to supplement the record in this case. The documents submitted by Bonnie did not introduce a new theory or argument to which Allen was unable to respond. They merely corroborate testimony Bonnie gave at the hearing. The letter from Eagley corroborates Bonnie's testimony that she works primarily at TSA and less at Gwennie's. The letter from Holtman corroborates her testimony that she sees a chiropractor for her injuries and that she has been advised not to work at Gwennie's. The invoices corroborate Bonnie's testimony that Rick's Home Improvement worked on the marital home at the time she testified the house was under repair. These documents did not serve as the basis of the court's decision. In fact, the court stated it "did not rely to any appreciable extent" on the exhibits. Allen's due process rights were not violated by Bonnie's supplementation of the record.

### D. Attorney's Fees

In the initial appeal we vacated the superior court's award of attorney's fees because we vacated its property division.[68] We reach the same result here as to the trial court's general award of fees, but in order to streamline the proceedings on remand, we reach those arguments raised by Allen that we are able to resolve at this juncture, and we affirm the superior court's award of enhanced fees.

 First, we observe that the superior court correctly applied the two-step process on remand: it determined the award under the general rule based on the parties' relative economic circumstances, and then considered whether the award should be increased for Allen's misconduct.[69] The record shows that Bonnie's attorney charged $68,480 for his services. Citing the parties' relative economic circumstances and Allen's bad faith conduct and vexatious litigation, the court awarded $31,307.50 in attorney's fees to Bonnie—$25,000 under the general rule and $6,307.50 for Allen's conduct. Allen argues the superior court erred in making this award because it referred to Rule 82 and because it erroneously assessed the parties' relative economic circumstances.

### 1. Any error in awarding attorney's fees under Civil Rule 82 was harmless.

 A superior court has broad discretion to award attorney's fees in divorce cases.[70] "We will not reverse a trial court's ruling on attorney's fees unless it is 'arbitrary, capricious, or manifestly unreasonable.' "[71]

 The court awarded Bonnie attorney's fees "pursuant to AS 25.24.140 and Civil Rule 82." Allen argues the court erred because "Civil Rule 82 does not apply to divorce cases." Allen is correct that the "prevailing party" rule of Rule 82 generally does not apply to divorce actions, except in the context of some post-judgment motions.[72] But the court in this case awarded the attorney's fees under both AS 25.24.140 and Rule 82; its mistaken reference to Rule 82 was harmless if the fee award was justified under AS 25.24.140.[73]

**67.** *Bostic v. State, Dep't of Revenue, Child Support Enforcement Div.*, 968 P.2d 564, 569–70 (Alaska 1998).

**68.** *Heustess I*, 158 P.3d 827, 835–36 (Alaska 2007).

**69.** *Id.* at 836.

**70.** *Carr v. Carr*, 152 P.3d 450, 457 (Alaska 2007) (citing *Sloane v. Sloane*, 18 P.3d 60, 64 (Alaska 2001)).

**71.** *Id.* at 457 (quoting *Schmitz v. Schmitz*, 88 P.3d 1116, 1122 (Alaska 2004)).

**72.** *Siggelkow v. Siggelkow*, 643 P.2d 985, 988 (Alaska 1982). *But see McGee v. McGee*, 974 P.2d 983, 992 (Alaska 1999) (quoting *Lowe v. Lowe*, 817 P.2d 453, 460 (Alaska 1991)) (" '[T]he divorce judgment exception to Rule 82 does not apply to post-judgment modification and enforcement motions.' ").

**73.** *Cf. Siggelkow*, 643 P.2d at 988.

**2. The superior court's assessment of the parties' relative economic circumstances must be reconsidered on remand, but the court correctly considered Allen's greater income and income-earning capacity.**

Allen contends the court abused its discretion by basing its general fee award on the parties' relative economic circumstances, because: (1) in 2007 the parties earned similar income; (2) Bonnie's income has increased, whereas Allen's fluctuates; (3) the court erroneously relied on Allen's failure to pay child support; and (4) the court erroneously neglected to consider that it had awarded Bonnie most of the marital estate. Bonnie counters that the fee award was less than half of her actual fees and that Allen's complaints over his current financial situation center on "support for a child he failed to support."

The purpose of AS 25.24.140 in a divorce proceeding is to "assure that both spouses have the proper means to litigate the divorce action on a fairly equal plane."[74] "We have repeatedly stated that cost and attorney's fees awards in divorce cases are to be based primarily upon the relative economic situations and earning capacities of the parties."[75] Relative economic situations include both earning capacity and income.[76] We have suggested that the effects of a property division as well as the expenditure of fees should be considered as relevant economic circumstances.[77] Finally, in *Heustess I* we observed that Bonnie "bore most of the burden of supporting [the child] while [Allen] failed to pay interim child support contrary to the [superior] court's order,"[78] and we noted that "Allen's failure to pay interim child support is relevant to Bonnie's economic circumstances" for purposes of assessing attorney's fees.[79]

We can dispose of Allen's first two arguments because the superior court's findings regarding the parties' relative income and earning capacity are well supported by the record, and they are consistent with an award of fees in Bonnie's favor.

But we cannot reach Allen's remaining two arguments. The overall property division must be reconsidered on remand to determine whether Allen's vexatious litigation conduct was double-counted, and Allen's child support arrearage must be recalculated. We do not decide Allen's argument that the fee award would make him "effectively bankrupt because if he sells all of the assets he got from the marriage, he would still owe significant child support arrearages," but we observe that absent his liability for the child support arrearage, Allen would have received $57,001 of the marital estate, (32% of $178,127) over twice the amount of fees awarded to Bonnie under AS 25.24.140.

The premise of Allen's remaining two arguments concerning the parties' respective financial circumstances may change after remand.[80] We therefore vacate the general fee award and remand for reconsideration consistent with this opinion.

**3. The superior court did not err in increasing the attorney's fee award based on Allen's bad-faith conduct and vexatious litigation.**

The superior court enhanced its fee award by $6,307.50 based on Allen's bad-faith con-

**74.** *Sanders v. Sanders*, 902 P.2d 310, 319 (Alaska 1995) (quoting *Kowalski v. Kowalski*, 806 P.2d 1368, 1372 (Alaska 1991)).

**75.** *Dodson v. Dodson*, 955 P.2d 902, 914 (Alaska 1998).

**76.** *See Fernau v. Rowdon*, 42 P.3d 1047, 1060 (Alaska 2002); *Doyle v. Doyle*, 815 P.2d 366, 373 (Alaska 1991).

**77.** *See Fernau*, 42 P.3d at 1060 (noting, in considering whether the court abused its discretion in awarding attorney's fees, that "[t]he parties were not placed on an equal economic plane through the property division"); *Johnson v. Johnson*, 564 P.2d 71, 77 (Alaska 1977) ("At least

the division of property and possibly the expenditure of fees have bearing [on the] relative economic standing of the parties.").

**78.** 158 P.3d 827, 835 n. 26 (Alaska 2007).

**79.** *Id.*

**80.** The court may or may not adjust the overall property division on remand, but Allen's child support arrearage will be adjusted after his income for 1995 is determined and federal income tax liability is deducted from his gross income for each of the years in question.

duct and vexatious litigation. Allen argues that the superior court clearly erred by finding that he refused to return a truck owned by Bonnie's son Matthew and that the court abused its discretion in relying on this finding to increase the award of attorney's fees. We find no merit to these arguments.

On February 24, 2005, the superior court ordered Allen "to transfer title [to the truck] to Matthew *and* [Bonnie] within ten days of the date of this Order." (Emphasis in original.) Allen had not complied with the order by March 9—more than ten days after the court's order—so Bonnie filed a motion to show cause and a motion for sanctions and attorney's fees. On March 15, Allen signed over the title, but he did not deliver it to Bonnie; he delivered it to his attorney, who delivered it to Bonnie's attorney, on March 29.

██ Allen failed to comply with the superior court's order to transfer the title within ten days, and failure to comply with a court order supports a finding of vexatious conduct.[81] Contrary to Allen's argument, this is true even if the court chose not to hold Allen in contempt.[82] The court did not abuse its discretion by increasing the award of fees for Allen's conduct involving Matthew's truck.

██ Allen also argues that the superior court erred by increasing the award for his conduct during discovery. On July 2, 2007, Bonnie submitted a discovery request for Allen's federal income tax returns from 1991 to 1997. On October 29 the court orally ordered Allen to "fully respond to all" requests. Allen executed a release to obtain the returns from the IRS on November 5. On November 20 Bonnie's attorney sent a letter to Allen's attorney, stating, "[O]btaining the tax returns of Mr. Heustess from the IRS is not possible. Therefore, request is hereby made for the wage and income transcript for

the years you have indicated he has them. . . . If you don't provide the information, it can be left up to CSSD." It seems no such information was produced by Allen as of the date of the hearing.

Allen suggests that he waited to produce his returns until Bonnie formally amended her complaint to assert a claim for premarital child support. He further contends his litigation conduct was not vexatious because the Internal Revenue Service destroys records after seven years and because Bonnie suffered no detriment. Allen's argument is unpersuasive. Allen was on notice since our decision in the first appeal that premarital child support would be at issue on remand.[83] And although IRS records might be destroyed after seven years, the superior court was well within its discretion to conclude that Allen had an obligation to provide substitute income information and that his failure to do so was deliberate and vexatious. The superior court carefully traced the amount of fees Bonnie incurred in response to the dispute involving Matthew's truck and the discovery dispute over Allen's income tax information.[84] Although the superior court will have to reassess its general fee award on remand, that portion of the fees awarded for Allen's vexatious conduct is supported by the record, and we affirm it.

## V. CONCLUSION

We REVERSE the superior court's calculation of Allen's child support arrearage and REMAND for recalculation under Rule 90.3. We REMAND the superior court's property division for additional findings consistent with this opinion. We VACATE the superior court's general award of attorney's fees and REMAND for proceedings consistent with this opinion, but AFFIRM its order enhanc-

81. *See Ward v. Urling*, 167 P.3d 48, 53 (Alaska 2007); *Beard v. Beard*, 947 P.2d 831, 835 (Alaska 1997).

82. *See Rodvik v. Rodvik*, 151 P.3d 338, 352 (Alaska 2006) (upholding determination of vexatious conduct where defendant asked that plaintiff be held in contempt but court chose not to do so).

83. *Heustess I*, 158 P.3d at 835–36.

84. On its Order Awarding Attorney's Fees, the superior court wrote, "Matthew's truck-issue fees: $1,415" and "avoiding discovery-hiding income fees $4,892.50" for a total of $6,307.50 in additional fees. Our review of the record confirms that these sums correspond to the amounts Bonnie was actually billed for her lawyer's work on these issues.

ing the fees. We AFFIRM the remainder of the superior court's rulings in all respects.

FABE, Justice, concurring in part and dissenting in part.

WINFREE, Justice, dissenting in part.

FABE, Justice, concurring in part and dissenting in part.

I agree with the court's opinion in all respects but one: I do not see a need to remand this case to the superior court for additional findings to clarify the basis or extent of its unequal distribution of the marital estate. I would affirm both the trial court's decision to award the greater share of the marital assets to Bonnie and its decision to enhance attorney's fees based on Allen's vexatious behavior during litigation.

The court correctly concludes that the trial court "did not abuse its discretion by awarding Bonnie a larger share of the marital estate."[1] This conclusion is well supported by the trial court's careful consideration of such relevant factors as the parties' relative ages; Bonnie's serious long-term health issues, which limit her ability to increase her income; Allen's significantly greater earning capacity; Bonnie's conduct in paying most, if not all, of the marital debts; and Bonnie's payments of the mortgage and all repairs for the marital home after separation. Indeed, the trial court made thoughtful and detailed factual findings that amply support its decision to divide the marital estate in an unequal manner:

> 17. In order to determine how best to allocate the economic effects of divorce between the parties the court has considered the factors specified in AS 25.24.160(a)(4) in the division of marital property.
>
> (a) During the six years of marriage (and two additional years of co-habitation) the parties acquired personal property, debts and land in Palmer.
>
> (b) Ms. Kelley–Heustess is five years older than the defendant and has serious long-term health issues that limit her ability to make a living.
>
> (c) Defendant's earning capacity is much greater than that of Ms. Kelley–Heustess. He has consistently earned two or three times as much and the earnings discrepancy in the future will probably be greater.
>
> (d) All of the defendant's debts were paid when Ms. Kelley–Heustess refinanced her home. As a result, she has been paying most, if not all, of the marital debts while retaining the residence.
>
> (e) Neither party has unreasonably depleted marital assets. Defendant's conduct during litigation has been vexatious. Defendant has engaged in a number of litigation strategies that have unnecessarily increased attorney's fees, such as his refusal to return the truck that belonged to Matt and his refusal to provide basic pretrial discovery.
>
> (f) The family home was awarded to Ms. Kelley–Heustess and should be awarded to her because she has sole custody of the parties' minor child ...—and defendant has not paid child support for most of the child's life.
>
> (g) Ms. Kelley–Heustess' income is constrained by her injuries. She now works for TSA. There is not much prospect for her to increase her income.
>
> (h) Ms. Kelley–Heustess' home in Chugiak was acquired by her prior to the marriage. She has made all payments and repairs since divorce in 2005.
>
> (i) From time to time Ms. Kelley–Heustess has received rental income. The black-mold problem in the rental has or will cost as much or more to remediate than she has received in rents over the past two or three years.
>
> 18. Taking these factors into consideration, it is the Court's intention to deviate from equal distribution of the marital estate and award a greater share to Ms. Kelley–Heustess.

Yet, after concluding that the trial court did not abuse its discretion in fashioning an unequal distribution of marital property, the court remands the property division, requiring additional findings because it "cannot determine whether [the trial court] double-

---

1. Op. at 473.

counted Allen's vexatious litigation conduct." [2]

The court focuses on a single observation by the trial court—in the same subparagraph as its explicit finding that "[n]either party has unreasonably depleted marital assets"—noting that Allen's vexatious "litigation strategies ... have *unnecessarily increased attorney's fees.* ..." (Emphasis added.) But nothing in the trial court's analysis indicates that this finding played any role in the trial court's division of property: The trial court expressly indicated that this finding related to an increase in attorney's fees. I interpret the placement of this finding within the subparagraph· determining that neither party had unreasonably depleted marital assets as designed to signal that the positive finding of no dissipation should not be taken as overlooking Allen's problematic behavior in a different context. After this preview, the trial court then proceeded, quite properly, to take Allen's litigation conduct into consideration in its award of attorney's fees.

In sum, I see no evidence of the "double-count[ing] Allen's vexatious litigation conduct" that troubles the court. The trial court's findings are thorough and clear. The trial court correctly recognized that Allen's vexatious litigation strategies "ha[d] unnecessarily increased attorney's fees," but there is no indication that the trial court took this fact into account in dividing the marital estate. I would affirm the trial court's proper-

ty division and enhanced attorney's · fee award, and I therefore respectfully dissent from this aspect of the court's opinion.

**WINFREE, Justice, dissenting in part.**

I respectfully disagree with the court's ruling regarding application of the statute of limitations to Bonnie's reimbursement claim for child-rearing expenditures incurred when no child support order was in place. As the court states, AS 09.10.100(a) sets out a ten-year statute of limitations for the claim.[1] In my view the court over-stretches existing precedent and creates inconsistencies in our case law by holding that the claim actually belongs to the child and is tolled during the child's minority under AS 09.10.140.[2] The claim belongs to Bonnie and the ten-year statute of limitations should apply.

In *State, Department of Revenue, Child Support Enforcement Division ex rel. Inman v. Dean* we consolidated two appeals arising from the Child Support Enforcement Division's (CSED) attempts to reduce to judgment child support arrearages owed by noncustodial parents.[3] In each case the superior court ruled CSED could not recover support installments that were more than ten years old, reasoning that "AS 09.10.040, the statute of limitations applicable to 'an action upon a judgment,' bars the collection of past-due child support when a judicial enforcement

---

**2.** *Id.*

**1.** AS 09.10.100(a) provides that "[a]n action for a cause not otherwise provided for may be commenced within [ten] years after the cause of action has accrued."

**2.** AS 09.10.140 provides in relevant part: "if a person entitled to bring an action ... is at the time the cause of action accrues ... under the age of majority ... the time [during which the person is under the age of majority] is not a part of the time limit for the commencement of the action."

**3.** 902 P.2d 1321, 1322–23 (Alaska 1995). CSED relied on AS 25.27.226, which provides:

To collect the payment due, the custodian of a child, or the agency on behalf of that person, shall file with the court (1) a motion requesting establishment of a judgment; (2) an affidavit

that states that one or more payments of support are 30 or more days past due and that specifies the amounts past due and the dates they became past due; and (3) notice of the obligor's right to respond. Service on the obligor must be in the manner provided in AS 25.27.265. The child's custodian, or the agency on behalf of the custodian, shall file with the court proof of service of the petition, affidavit, and notice. The obligor shall respond no later than 15 days after service by filing an affidavit with the court. If the obligor's affidavit states that the obligor has paid any of the amounts claimed to be delinquent, describes in detail the method of payment or offers any other defense to the petition, then the obligor is entitled to a hearing. After the hearing, if any, the court shall enter a judgment for the amount of money owed. If the obligor does not file an affidavit under this section, the court shall enter a default judgment against the obligor.

action is not commenced within ten years of the missed payment." [4]

On appeal we held the superior courts misapplied AS 09.10.040.[5] We began by noting that the cases involved enforcement of existing child support orders and that by statute each unpaid support obligation is considered a judgment.[6] We then rejected the superior courts' application of AS 09.10.040 because CSED "did not initiate a new 'action' to establish the non-custodial parent's liability. Rather, CSED sought to *collect* a valid, unsatisfied domestic judgment...." [7] We explained that execution on a judgment is not a commencement of an entirely new civil action, and that AS 09.35.020 provides the relevant time limitations on judgment executions.[8] Because CSED's efforts to collect the owed support were "in aid of enforcement of a judgment which was already in existence" and "executing upon a judgment does not operate to commence an entirely new civil action," we vacated the superior courts' decisions.[9]

In *State, Department of Revenue, Child Support Enforcement Division ex rel. Valdez v. Valdez*, as part of Alfonzo and Linda Valdez's 1983 divorce, Alfonzo was ordered to pay child support.[10] In 1994 Linda moved to modify the original support order.[11] The superior court granted the motion, increasing

Alfonzo's ongoing support obligation.[12] But that court also considered Alfonzo's motion to clarify the amount of his support arrearages, entering an order stating CSED "*may not attempt to collect arrearages older than June 1, 1984.*" [13]

On appeal we relied on *Dean* and held that AS 09.10.040 did not bar CSED from attempting to collect pre-June 1984 arrearages owed under the existing child support order, and noted that any assessment of timeliness under AS 09.35.020 was "premature." [14] We then considered the doctrines of laches, estoppel, and waiver.[15] Although we determined that the doctrine of laches was unavailable in the context of child support collection actions, we acknowledged that Alfonzo's arguments concerning waiver and estoppel had support in the record.[16] But we stated in a footnote:

> Where CSED is acting on behalf of the custodial parent to collect child support which is then passed through to that parent, CSED's conduct cannot amount to waiver or estoppel. *The right to support is that of the child and thus cannot be waived by CSED.* However, where CSED is collecting support as reimbursement to the State for AFDC payments made to the custodial parent, the doctrines of waiver or

---

4. *Dean,* 902 P.2d at 1322 (footnote omitted).

5. *Id.* at 1323.

6. *Id.* at 1323–24 (noting AS 25.27.225).

7. *Id.* at 1324 (emphasis in original).

8. *Id.* AS 09.35.020 provides:
 When a period of five years has elapsed after the entry of judgment and without an execution being issued on the judgment, no execution may issue except by order of the court in which judgment is entered. The court shall grant the motion if the court determines that there are just and sufficient reasons for the failure to obtain the writ of execution within five years after the entry of judgment.

9. *Dean,* 902 P.2d at 1324, 1326. We also noted that the legislature in 1994 had amended AS 09.10.040 to add a subsection specifically controlling actions to collect child support arrearages, but that the statutory change became effective after CSED filed its original motions. *Id.* at 1322 n. 1 (citing AS 09.10.040, *as amended by* ch.

86, §§ 1–2, SLA 1994). The added subsection provided that "[a]n action may be brought to establish a judgment for child support payments that are 30 or more days past due under a support order ... if the action is commenced by the date on which the youngest child covered by the support order becomes 21 years of age." Ch. 86, § 2, SLA 1994 (codified at AS 09.10.140(b)). This subsection was repealed effective June 1998. Ch. 132, § 54, SLA 1998.

10. 941 P.2d 144, 146 (Alaska 1997).

11. *Id.* at 147.

12. *Id.*

13. *Id.* (emphasis in original).

14. *Id.* at 151–52.

15. *Id.* at 152–54.

16. *Id.*

estoppel may apply.[17]

Today the court relies on *Valdez*'s footnoted statement that "[t]he right to support is that of the child" to hold the statute of limitations for Bonnie's claim is tolled,[18] but *Valdez* is distinguishable: in *Valdez* the initial support order was already established, while the case before us concerns the establishment of an initial order and the reimbursement of past child-rearing expenses. The court ignores this distinction. The court then builds on its *Valdez* reliance with *Grober v. State, Department of Revenue, Child Support Enforcement Division ex rel. C.J.W.*, stating that there, in connection with an action to establish paternity, "we held that the tolling provision in AS 09.10.140 applies even when another brings the action on behalf of a minor."[19] But the court ignores *Grober*'s subject matter—paternity establishment, not child support.[20]

The application of *Valdez* and *Grober* to a reimbursement claim for child-rearing expenditures incurred absent a support order is unsustainable. Assume that no child support order is ever established during a child's minority and that a reimbursement claim actually belongs to the child and can be brought after the child reaches the age of majority. It follows that the child may reach majority, file an action against a non-supporting parent, and obtain a judgment for the amount of the Alaska Civil Rule 90.3 child support that would have been due the custodial parent during the child's minority

had a support order been in place.[21] Yet the custodial parent incurred the child-rearing expenses, not the child. The simple fact is that a reimbursement claim belongs to whomever incurred the expenses—in this case Bonnie—not the child.[22]

Today's decision undermines the rationale behind statutes of limitations, which serve "to encourage promptness in the prosecution of actions and thus avoid the injustice which may result from the prosecution of stale claims ... [and] attempt to protect against the difficulties caused by lost evidence, faded memories and disappearing witnesses."[23] As this case aptly demonstrates, it is difficult to acquire or recreate financial records from 10 to 20 years earlier to calculate reimbursement under Rule 90.3.

Today's decision also creates inconsistencies with other case law. Under the court's application of *Grober*, the custodial parent's failure to seek reimbursement for child-rearing expenses prior to a support order's establishment cannot be a waiver of the reimbursement claim. Yet we have previously held that a custodial parent's failure to properly assert a reimbursement claim for such expenses constituted a waiver of that claim. In *Harvey v. Cook* a mother listed a reimbursement claim in a counterclaim against the father, but did not pursue the claim at trial.[24] She argued on appeal that she was entitled to the reimbursement.[25] Relying on the rule that "issues not properly raised in the trial court will not ordinarily be consid-

---

**17.** *Id.* at 154 n. 14 (emphasis added).

**18.** The court also notes that "[o]ther states have reached the same conclusion." But this approach is not universal. *See, e.g., Kimble v. Ellis*, 101 P.3d 950, 953 (Wyo.2004) ("[W]e conclude that the right to obtain support is not waived by the custodial parent's inability to act, inaction, or acquiescence to the nonpayment of child support if an action is brought within the statute of limitations." (quoting *Hammond v. Hammond*, 14 P.3d 199, 202–03 (Wyo.2000))).

**19.** 956 P.2d 1230, 1232 (Alaska 1998) (holding that "child, upon reaching the age of majority, may bring a paternity action, and that prior to the age of majority a parent or guardian ad litem may maintain a paternity action on behalf of a child").

**20.** *Id.*

**21.** In *Vachon v. Pugliese*, 931 P.2d 371, 381–82 (Alaska 1996), we held that reimbursement of child-rearing expenses during periods where no child support order is in place is calculated under Rule 90.3.

**22.** We recognized this in *Valdez* by noting that the State could waive reimbursement of child support it provided indigent custodial parents even when a child support order was in place. 941 P.2d at 154 n. 14.

**23.** *Alakayak v. British Columbia Packers, Ltd.*, 48 P.3d 432, 461 n. 121 (Alaska 2002) (quoting *Byrne v. Ogle*, 488 P.2d 716, 718 (Alaska 1971)).

**24.** 172 P.3d 794, 802 (Alaska 2007).

**25.** *Id.*

ered on appeal," we held the mother waived her claim to the reimbursement.[26] Likewise, in *Jaymot v. Skillings–Donat,* a mother did not raise a reimbursement claim in her pretrial pleadings or at trial.[27] We concluded the mother waived the claim, stating "[w]e recognize that a parent may not waive the right to receive child support payments by acquiescence or private agreement unless that agreement is approved by the court. But when a parent does not assert a right to past-due support payments at trial, that right cannot be considered on appeal."[28] It is inconsistent to hold that a parent cannot waive a reimbursement claim by failing to bring it within the statute of limitations but can waive it by failing to raise it at trial.

For the foregoing reasons, I would reverse the superior court's determination that Bonnie's claim was not limited by AS 09.10.100(a)'s ten-year statute of limitations.

**26.** *Id.* at 802–03.

**27.** 216 P.3d 534, 546 (Alaska 2009).

**28.** *Id.* at 546–47 (citing *Paxton v. Gavlak,* 100 P.3d 7, 13 (Alaska 2004)).